**BAKER BOTTS L.L.P.**
Kevin Sadler (SBN# 283765)
kevin.sadler@bakerbotts.com
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
Telephone:   (650) 739-7500
Facsimile:   (650) 739-7699

Van H. Beckwith (*pro hac vice* to be filed)
van.beckwith@bakerbotts.com
Ryan L. Bangert (*pro hac vice* to be filed)
ryan.bangert@bakerbotts.com
2001 Ross Avenue
Suite 600
Dallas, TX 75201-2980
Telephone:   (214) 953-6500
Facsimile:   (214) 953-6503

Attorneys for Defendants Mott's L.L.P.
and Dr Pepper Snapple Group, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED RAHMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOTT'S L.L.P., DR PEPPER SNAPPLE GROUP, INC., and DOES 1 through 10,<br><br>Defendants. | Case No. **CV 13 3482**<br><br>**DEFENDANTS MOTT'S L.L.P. AND DR PEPPER SNAPPLE GROUP, INC'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332(d), 1441(b), 1446, AND 1453** |

FILE VIA FAX

NOTICE OF REMOVAL

## NOTICE OF REMOVAL

Defendants Mott's L.L.P. ("Mott's") and Dr Pepper Snapple Group, Inc. ("DPSG")[1] remove this action from the Superior Court in the State of California for the County of San Francisco to the United States District Court for the Northern District of California. Removal is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(b), 1446, and 1453, on the grounds described below. Because there are no other named defendants in this action, no consent to removal is necessary.

### I. FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

1. On June 13, 2013, Plaintiff Mohammed Rahman filed a class action complaint styled *Rahman v. Mott's L.L.P., et al.*, Case No. CGC-13-532078, in the California Superior Court for the County of San Francisco. Mott's and DPSG were served with the Summons and Complaint on June 26, 2013. Copies of the service of process, summons, and Class Action Complaint ("Compl.") are attached to this Notice as Exhibits 1 and 2. No other documents have been filed in the Superior Court in this matter.

2. Mott's—which is the proper defendant in this case—markets and sells Mott's 100% Apple Juice and certain unsweetened apple sauce and fruit products which have labels containing the words "No Sugar Added." According to Rahman, the labels on these products violate California state law because they do not comply with certain Food and Drug Administration ("FDA") regulations concerning use of the words "No Sugar Added" on food and beverage labels. Compl. ¶¶ 1–16. Rahman alleges that he "would not have purchased" the products had he "not observed the No Sugar Added Label." *Id.* ¶ 32.

3. Based on these alleged regulatory violations, Rahman asserts causes of action for unlawful, unfair, and fraudulent business practices in violation of the California Unfair Competition Law (California Business and Professions Code § 17200, *et seq.*); false advertising under the California False Advertising Law (California Business and Professions Code § 17500,

---

[1] DPSG is an improper party to this action. Mott's is the owner and licensor of the Mott's trademark and the proper defendant in this case. By removing this action, DPSG does not concede that it is the proper defendant or waive its right seek dismissal on that basis.

*et seq.*); misrepresenting the nature of goods sold to consumers in violation of the California Consumer Legal Remedies Act (California Civil Code § 1750, *et seq.*); negligent misrepresentation; and breach of quasi-contract. *Id.* ¶¶ 50–89.

4. Rahman seeks relief on a class-wide basis. *Id.* ¶¶ 34–49. The remedies sought by Rahman include, *inter alia*, an order requiring Mott's to change the packaging for all products named in the Complaint, including Mott's 100% Apple Juice, to comply with Rahman's view of the applicable food labeling regulations; an order requiring Mott's to engage in corrective advertising; actual damages or full restitution of all funds expended by Rahman and other California consumers on Mott's "No Sugar Added" products during the class period; punitive damages; statutory enhanced damages; and attorneys' fees. *See id.* ¶ 92(e)–(k).

## II. LEGAL BASIS FOR REMOVAL

### A. The standard for removal under CAFA has been met.

5. Under CAFA, district courts have original jurisdiction over class action lawsuits in which (1) any member of a class of plaintiffs is a citizen of a state different from any defendant, and (2) the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). In addition, the proposed class must contain at least 100 members. *Id.* § 1332(d)(5). The defendant bears the burden to establish each of CAFA's requirements for removal jurisdiction. *See Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 997 (9th Cir. 2007).

6. Matters that satisfy CAFA's requirements are removable under 28 U.S.C. § 1446. This case meets all of the CAFA requirements for removal, and is timely and properly removed by the filing of this Notice.

#### (1) The minimal diversity requirement has been satisfied.

7. "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). Minimal diversity requires that the citizenship of at least one plaintiff differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A); *see also Schneider v. Bishop*, No. 12-1998, 2012 WL 5948465, at *1 (S.D. Cal. Nov. 17, 2012) (holding that minimal diversity under CAFA was met when the plaintiff was a

citizen of California and the defendant was incorporated in Washington and maintained its principal place of business in Washington). That requirement has been met here because Rahman is a citizen of California, while DPSG and Mott's are citizens of different states.

8. An individual is a citizen of the state where he resides. 28 U.S.C. § 1332(a)(1). Rahman resides in California and is a citizen of that state. Compl. ¶ 18.

9. A corporation is a "citizen of every state…by which it has been incorporated and of the State…where it has its principal place of business." 18 U.S.C. § 1332(c)(1). The Supreme Court has clarified that a corporation's principal place of business is the place where "a corporation's officers direct, control, and coordinate the corporation's activities," which is typically "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). DPSG is incorporated under the laws of the state of Delaware. Compl. ¶ 20; Exhibit 3 (Declaration of Ryan Bangert ("Bangert Decl.")) Exhibit A. DPSG's headquarters is located in Plano, Texas, and DPSG's officers direct, control, and coordinate the company's activities from Plano, Texas. Compl. ¶ 20; Exhibit 4 (Declaration of Eric Blackwood ("Blackwood Decl.")) ¶ 3.

10. A limited liability partnership is a citizen of all the states in which its partners are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Mott's is a subsidiary of and owned by DPSG. Blackwood Decl. ¶ 4. Moreover, Mott's headquarters is located in Plano, Texas, and its board of managers and officers direct, control, and coordinate the company's activities from Plano, Texas. *Id.*; Compl. ¶ 19.

**(2) The $5 million amount-in-controversy requirement has been satisfied.**

11. Rahman's lawsuit also meets CAFA's amount-in-controversy requirement because it seeks restitution and declaratory and injunctive relief that, in the aggregate, are worth more than CAFA's $5 million threshold.

12. When removal is sought under CAFA, the amount in controversy requirement should be "interpreted expansively." *Yeroushalmi v. Blockbuster, Inc.*, No. 05-225, 2005 WL 2083008, at *3 (C.D. Cal. July 11, 2005), citing S. Rep. No. 109-14, at 42 (2005). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and

that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). If the court is uncertain whether the amount in controversy exceeds $5 million, "the court should err in favor of exercising jurisdiction over the case." *Yeroushalmi*, 2005 WL 2083008, at *3, citing S. Rep. No. 109-14, at 42 (2005).

13. Under CAFA, "[t]he amount in controversy includes that amount of damages in dispute...." *Turnage v. Old Dominion Freight Line, Inc.*, No. C 13-1409 PJH, 2013 WL 2950836, at *2 (N.D. Cal. June 14, 2013). The amount in controversy also includes restitution. *Tompkins v. Basic Research LLC*, No. 08-244, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008) (expressly including "a potential restitution award" when calculating the amount in controversy for purposes of CAFA jurisdiction.).

14. The amount in controversy in a case removed under CAFA also "includes either the defendant's cost of compliance with an injunction or the plaintiff's benefit from the injunction." *Id.* at *4 (citing *In re Ford Motor Co.*, 264 F.3d 952 (9th Cir. 2001)); *see also Yeroushalmi*, 2005 WL 2083008, at *3 (noting that a matter should be subject to federal jurisdiction under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)").

15. If a plaintiff fails to plead an amount in controversy in a class action complaint, a defendant seeking removal "must prove by only a preponderance of the evidence that the damages claimed exceed $5,000,000." *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007). When a proposed class plaintiff alleges damages for less than $5 million, a defendant seeking removal "must prove with legal certainty that CAFA's jurisdictional amount is met." *Id.* at 1000. The legal certainty standard "does *not* mean the defendant must prove the plaintiff's case; rather, the defendant must produce enough evidence to allow a court 'to *estimate with certainty the actual amount in controversy.*'" *Campbell v. Vitran Express, Inc.*, No. 12-55052, 471 Fed. App'x 646, 647 (9th Cir. Mar. 08, 2012) (quoting *Lowdermilk*, 479 F.3d at 1001 (emphasis added)). Regardless of which standard is applied here, removal is appropriate because

it is legally and factually certain that the amount in controversy exceeds $5,000,000.

        (a)    **Rahman requests restitution and damages that will exceed $5,000,000.**

16.    Rahman requests restitution and damages that, if granted, would cost Mott's and DPSG well in excess than $5,000,000.

17.    Rahman requests "full restitution of all funds acquired from Plaintiff and Class Members from the sale of misbranded Class Products during the relevant class period." Compl. ¶ 92(h). Rahman identifies the class period as "four years prior to the filing of the original complaint in this action until the date of certification." Id. ¶ 36. Rahman filed his complaint on June 13, 2013.

18.    During the 52-week period preceding June 15, 2013, California consumers purchased over 2.4 million units of Mott's 100% Apple Juice with "No Sugar Added" labels from grocery, convenience, and drug stores located in California, and paid of $6 million for those units. Blackwood Decl. ¶ 5. Those figures do not include any sales made outside the Los Angeles, San Francisco, San Diego, and Sacramento markets, or sales made outside the grocery, convenience, and drug store channels. Id.

19.    From January 1, 2012 to June 15, 2013, California consumers purchased over 2.2 million units of Mott's Natural Applesauce, Mott's Healthy Harvest products, Mott's Medleys products, and Mott's Snack and Go products with "No Sugar Added" labels (collectively the "Sauce Products") from grocery stores located in California, and paid over $6 million for those units. Id. ¶ 6. Those figures do not include any sales made outside the Los Angeles, San Francisco, San Diego, and Sacramento markets, or sales made outside the grocery store channel. Id.

20.    From January 1, 2012 to June 15, 2013, California consumers purchased approximately 1.2 million units of Mott's 100% Apple Juice with "No Sugar Added" labels from Wal-Mart stores in California at a cost of over $4 million, and 2 million units of Sauce Products with "No Sugar Added" labels at Wal-Mart stores in California at a cost of over $4 million. Id. ¶ 7.

21.    Because California consumers spent approximately $20 million to purchase Mott's

100% Apple Juice and Sauce Products with "No Sugar Added" labels that are the subject to Rahman's Complaint in California grocery, convenience, drug, and Wal-Mart stores during the 17.5 month period preceding the filing of this lawsuit, the amount in controversy unquestionably exceeds CAFA's $5 million threshold. *See, e.g., Watkins v. Vital Pharms., Inc.*, No. 13-55755, 2013 WL 3306322, at *2 (9th Cir. July 2, 2013) (per curiam) (holding that a declaration stating that total sales of the product at issue exceeded $5 million during the class period was sufficient to meet CAFA's amount in controversy requirement).

        (b)      **Rahman requests declaratory and injunctive relief that will cost Mott's and DPSG more than $2 million.**

22. Rahman requests declaratory and injunctive relief that, if granted, will cost Mott's and DPSG more than $2 million. Rahman requests (1) a declaration that the Mott's "No Sugar Added" label is unlawful; (2) an order requiring Mott's and DPSG to change the product packaging for all products identified in the Complaint; and (3) an order requiring Mott's and DPSG to perform corrective advertising throughout California. *See* Compl. ¶ 92(c), (e)–(g). If Rahman were granted the relief he seeks, Mott's would incur substantial costs to (at the very least) (1) dispose of its existing inventory of products labeled "No Sugar Added" in its California plants and warehouses; (2) repurchase, reclaim, and dispose of Mott's products bearing the No Sugar Added labeling stocked at retail locations in California; and (3) execute a corrective advertising campaign in California.

23. To comply with a court order that Mott's stop selling products labeled "No Sugar Added" in California, Mott's would incur costs of over $1 million to dispose of its current inventory of those products stocked in its California plants and warehouses. Blackwood Decl. ¶ 8.

24. To comply with a court order that Mott's change out the product labeling on all Mott's products bearing "No Sugar Added" labels, Mott's and DPSG would incur costs of approximately $500,000 to repurchase and reclaim the entire stock of Mott's 100% Apple Juice and Sauce Products with "No Sugar Added" labels from retailers in California. *Id.* ¶ 9.

25. To execute a one-month corrective advertising campaign using print media

channels, including billboard and newspaper advertisements, used by Mott's to advertise its products, Mott's would incur costs of over $500,000. *Id.* ¶ 10.

26. In total, the cost to Mott's and DPSG to comply with the declaratory and injunctive relief requested by Rahman would be more than $2 million.

**(3) The 100 class members requirement has been satisfied.**

27. Finally, the proposed class contains at least 100 members, satisfying CAFA's last requirement. Rahman seeks to represent a class of "[a]ll California residents" who, within four years preceding the filing of the Complaint, purchased the Mott's products labeled "No Sugar Added." Compl. ¶ 36. Rahman's alleged "class period" includes "any time between four years prior to the filing of the original complaint in this action until the date of certification." *Id.* Rahman further alleges that the "Class members are so numerous that joinder of all members of the Class is impracticable." *Id.* ¶ 38. At least 2.4 million containers of Mott's 100% Apple Juice alone were sold to consumers in California in just the fifty-two week period ending June 15, 2013. Blackwood Decl. ¶ 5. Thus, it is certain that the number of California residents who purchased the products at issue in the Complaint exceeds 100.

**B. Mott's and DPSG removed this case in a timely fashion.**

28. Mott's and DPSG were served with the Summons and Complaint on June 26, 2013. This notice is therefore timely pursuant to 28 U.S.C. § 1446(b).

**C. Mott's and DPSG have provided notice of removal to Rahman and the State Court.**

29. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of this filing will be served on Rahman's counsel of record: Capstone Law APC, 1840 Century Park East, Suite 450, Los Angeles, California 90067. A copy of this Notice will also be filed with the Clerk for the Superior Court of the County of San Francisco.

### III. CONCLUSION

For all of the reasons stated above, this action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d). Accordingly, this action is removable pursuant to 28 U.S.C. § 1441(a) and § 1453. WHEREFORE, Defendants Mott's and DPSG give notice that the

above-described action pending against it in the Superior Court for the County of San Francisco is removed to this Court.

DATED: July 26, 2013

BAKER BOTTS L.L.P.

By: /s/ Kevin M. Sadler
Kevin Sadler
Attorney for Defendants
MOTT'S L.L.P. AND
DR PEPPER SNAPPLE GROUP, INC.