1

**BAKER BOTTS L.L.P.**
Kevin Sadler (SBN# 283765)
2  kevin.sadler@bakerbotts.com
1001 Page Mill Road
3  Building One, Suite 200
Palo Alto, CA 94304-1007
4  Telephone:     (650) 739-7500
Facsimile:      (650) 739-7699

5

Van H. Beckwith (*pro hac vice*)
6  van.beckwith@bakerbotts.com
Ryan L. Bangert (*pro hac vice*)
7  ryan.bangert@bakerbotts.com
2001 Ross Avenue
8  Suite 600
Dallas, TX 75201-2980
9  Telephone:     (214) 953-6500
Facsimile:      (214) 953-6503

10

Attorneys for Defendants
11  MOTTS L.L.P. and DR PEPPER SNAPPLE GROUP, INC.

12                    UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
13

14  MOHAMMED RAHMAN, on behalf of          **Case No. 4:13-cv-03482-SI**
    himself and all others similarly situated,
15                                          **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES IN SUPPORT OF**
16              Plaintiff,                  **DEFENDANTS' MOTION TO DISMISS**
                                            **CLASS ACTION COMPLAINT (RULES**
17        v.                                **9(B), 12(B)(1), AND 12(B)(6))**

18  MOTT'S L.L.P., DR PEPPER SNAPPLE        Date:  November 8, 2013
    GROUP, INC., and DOES 1 through 10,     Time:  9:00 a.m.
19                                          Courtroom: 10
              Defendants.                   Judge: Honorable Susan Illston
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................................. 1

II.     SUMMARY OF ALLEGED FACTS ....................................................................... 3

III.    APPLICABLE LEGAL STANDARDS .................................................................... 4

IV.     ARGUMENTS AND AUTHORITIES..................................................................... 5

        A. Rahman fails to allege California state-law claims based on violations of FDA
           regulations governing "No Sugar Added" claims............................................... 5

           1. The FDA has carefully explained when the claim "no sugar added" may be used on
              food and beverage labels............................................................................... 6

           2. The Mott's products named in the Complaint comply with the FDA regulation
              concerning use of the ingredient "concentrated fruit juice." ........................... 7

           3. The Mott's "no sugar added" products comply with the FDA regulation concerning
              "reduced calorie" statements............................................................................ 8

        B. Rahman has not alleged facts showing that a reasonable consumer would be deceived
           by "no sugar added" on Mott's labeling. ...................................................... 11

           1. Rahman fails to allege how or why he was misled. ....................................... 12

           2. A reasonable consumer would not be misled by the accurate "no sugar added"
              labeling on the Mott's products. ................................................................... 13

           3. No reasonable consumer would be misled by the accurate disclosure of caloric
              content on the Mott's labels. ......................................................................... 14

        C. Rahman's allegations fail to comply with Rule 9(b) ....................................... 15

        D. Rahman lacks standing to sue on products that he did not purchase. ............... 16

        E. Rahman lacks standing to seek declaratory and injunctive relief because he is not
           threatened by any future injury. .................................................................... 18

        F. Rahman's Claims for Negligent Misrepresentation and Quasi-Contract Likewise Fail.... 20

V.      CONCLUSION ................................................................................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001)................................................................. 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................... 4, 16

*Astiana v. Ben & Jerry's Homemade, Inc.,*
   No. 10-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011) .................... 6

*B.L.M. v. Sabo & Deitsch,*
   55 Cal. App. 4th 823 (1997) ................................................................ 20

*Baggett v. Hewlett-Packard Co.,*
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................................................ 20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................ 4

*Bernardi v. JPMorgan Chase Bank, N.A.,*
   No. 11-cv-04212 EJD, 2012 WL 2343679 (N.D. Cal. June 20, 2012) .................. 20

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001)............................................................. 16

*Campion v. Old Republic Home Protection Co.,*
   861 F. Supp. 2d 1139 (S.D. Cal. 2012) .......................................... 19, 20

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
   475 F. App'x 113 (9th Cir. 2012) ........................................................ 12

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
   No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011)......... 17

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................................. 19

*Delacruz v. Cytosport, Inc.,*
   No. C 11-3532 CW, 2012 WL 2563857 (N.D. Cal. June 28, 2012)......... 14

*Dvora v. General Mills.,*
   No. CV 11-1074-GW(PLAx), 2011 WL 1897349 ................................. 17

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004)................................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*,
    528 U.S. 167 (2000) ................................................................................................ 18

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006).................................................................................. 18

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) ................................................................... 20

*Grenier v. Spencer*,
    No. 2:12-cv-0258 KJM GGH PS, 2013 WL 211130 (E.D. Cal. Jan. 18, 2013) ..................... 5

*Hairston v. South Beach Beverage Products Co.*,
    12-cv-1429 JFW, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) ................................ 12

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999)................................................................................... 19

*In re Facebook PPC Adver. Litig.*,
    No. 5:09-cv-03043, 2010 WL 1746143 (N.D. Cal. Apr. 22, 2010)........................................ 21

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
    664 F. Supp. 2d 752 (E.D. Mich. 2009).................................................................... 20

*In re Toyota Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
    754 F. Supp.2d 1145 (C.D. Cal. 2010) .................................................................... 20

*Johns v. Bayer Corp.*,
    No. 09-cv-1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)........................... 16

*Kane v. Chobani, Inc.*,
    No. 12-CV-02425, 2013 WL 3703981 (N.D. Cal. July 12, 2013)........................................... 1

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)......................................................................... 4, 5, 15

*Lam v. General Mills*,
    859 F. Supp.2d 1097 (N.D. Cal. 2012) .................................................................... 17

*Lanovaz v. Twinings North America, Inc.*,
    No. 12-CV-02646, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ........................................... 1

*Lavie v. Procter and Gamble Co*,
    105 Cal. App. 4th 496, 508 (2003) .......................................................................... 12

*Mason v. Coca-Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011) ................................................................... 11, 12

*Neilson v. Union Bank of California, N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2005) ................................................................. 20

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................................. 18

*Park v. Los Angeles Unified Sch. Dist.*,
    No. 01-55135, 33 Fed. App'x 291 (9th Cir. Mar. 21, 2002) ................................... 18

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
    642 F. Supp. 2d 1112 (C.D. Cal. 2009) ................................................................... 6

*Rooney v. Cumberland Packing Corp.*,
    No. 12-cv-0033-H, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ........................ 12

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .................................................................................. 5

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .................................................................................. 4

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................. 18

*Trazo v. Nestle USA, Inc.*,
    No. 12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ............... 1, 16

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................... 4, 15, 16

*Vieira v. Woodford*,
    No. C 00-0043 PJH, 2002 WL 1226852 (N.D. Cal. May 30, 2002) ........................ 5

*Viggiano v. Hansen Natural Corp.*,
    No. CV 12-10747 MMM, 2013 WL 2005430, at *9 n.38 (C.D. Cal. May 13, 2013) ...... 13, 14

*Wang v. OCZ Technology Group, Inc.*,
    276 F.R.D. 618 (N.D. Cal. 2012) ..................................................................... 18, 19

*Werbel v. Pepsico, Inc.*,
    No. 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ................................. 12

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .................................................................................. 5

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ................................................................................................... 6

DEFENDANTS' MOTION TO DISMISS
CASE NO. 4:13-CV-03482-SI

**STATUTES**

21 U.S.C. § 343-1(a)(1)–(3) ........................................................................................... 5

21 U.S.C § 393(b)(2)(A) ............................................................................................... 6

**OTHER AUTHORITIES**

21 C.F.R. 101 ................................................................................................................. 3

21 C.F.R. § 73.250(a)-(b) ............................................................................................. 7

21 C.F.R. § 73.260(a)-(b) ............................................................................................. 7

21 C.F.R. § 100.1(c)(4) ................................................................................................. 5

21 C.F.R. § 101.12(b) tbl. 2 ..................................................................................... 9, 11

21 C.F.R. § 101.13(j)(1) ........................................................................................... 9, 10

21 C.F.R. § 101.22(k)(2) ............................................................................................... 7

21 C.F.R. §§ 101.30 .................................................................................................... 10

21 C.F.R. § 101.30(h)(1) ............................................................................................. 11

21 C.F.R. § 101.60(b)(2) ......................................................................................... 10, 16

21 C.F.R. § 101.60(b)(4)(i) ........................................................................................... 9

21 C.F.R. § 101.60(c)(2)(i) ........................................................................................... 8

21 C.F.R. § 101.60(c)(2)(i)-(v) ..................................................................................... 6

21 C.F.R. § 101.60(c)(2)(ii). ............................................................................... 3, 4, 6, 8

21 C.F.R. § 101.60(c)(2)(v) ...................................................................................... 3, 9

21 C.F.R. § 172.5(a)(1) ................................................................................................. 7

58 Fed. Reg. 2302, 2328 (Jan. 6, 1993) ...................................................................... 8

58 Fed. Reg. 2302, 2327 (Jan. 6, 1993) ...................................................................... 8

58 Fed. Reg. 2431, 2433 (Jan. 6, 1993) .................................................................... 11

Fed. R. Civ. P. 9(b) ................................................................... 2, 4, 14, 15, 20, 21

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 5, 18

Fed.R. Civ. P. 12(b)(6) ................................................................................................. 4

# I.    SUMMARY OF ARGUMENT

This lawsuit should be dismissed because the "no sugar added" labeling that Plaintiff Mohammed Rahman complains about is truthful, complies with FDA regulations, and could not mislead a reasonable consumer.  Rahman's claims are similar to those brought by plaintiffs in several other cases in this District asserting violations of California's consumer protection laws based solely on alleged violations of highly technical federal labeling rules.[1]  Designed to avoid federal preemption, these lawsuits cast private consumers in the role of the FDA and attempt to transform allegations of minor regulatory infractions into full-blown acts of consumer fraud.

In this case, Rahman misinterprets and misapplies technical FDA regulations governing nutrient content claims to allege nonexistent violations of those regulations.  Rahman then alleges claims under California consumer protection laws without pointing to a single false or misleading statement on the labels of any of the Mott's products that he accuses, and without alleging how the "no sugar added" labeling on those products misled him or any other consumer.  Moreover, Rahman does not allege that he even purchased eight of the nine products named in his Complaint.  Rahman's claims should be dismissed in whole or in part for at least the following reasons.

**First**, none of the Mott's products identified by Rahman contain added sugar in the form of concentrated fruit juice in violation of FDA regulations.  Six of the products identified by Rahman do not contain concentrated fruit juice *at all*.  Mott's 100% Apple Juice, in turn, is 100% fruit juice reconstituted from concentrate with no added sugars.  The FDA has expressly found that such juice products are eligible for "no sugar added" claims because the fruit juice concentrate is the product itself, and not an "added sugar."  Finally, two of the products contain very small amounts of concentrated vegetable and fruit juice "for color," not to sweeten the products, and therefore comply with the FDA's guidance concerning the use of "no sugar added" and concentrated fruit juice.

---

[1] *See e.g. Trazo v. Nestle USA, Inc*., No. 12-CV-2272 PSG, 2013 WL 4083218, at *8 (N.D. Cal. Aug. 9, 2013), *Lanovaz v. Twinings North America, Inc*., No. 12-CV-02646, 2013 WL 675929, at *1-2 (N.D. Cal. Feb. 25, 2013), *Kane v. Chobani, Inc*., No. 12-CV-02425, 2013 WL 3703981, at *7-10 (N.D. Cal. July 12, 2013).

**Second**, Rahman misapplies FDA regulations when he claims that Mott's "no sugar added" products are not "low calorie" or "reduced calorie" foods and therefore lack required disclosures.  Each of the Mott's products named in the Complaint qualifies as a reduced calorie food when compared to an appropriate reference food as required by FDA regulations.   In addition, all of the Mott's product labels at issue properly and accurately disclose the number of calories per serving, and Rahman does not allege otherwise.

**Third**, Rahman's claims also fail because, as a matter of law, no reasonable consumer would be misled by the labels on the Mott's products.  Rahman has failed to point to a single untrue or misleading statement on the labels.  All of the labels accurately state the ingredients in the product, the amount of sugar in the product, and the number of calories in the product.  Accordingly, Rahman's claims should be dismissed because none of the Mott's labels contain a false or misleading statement.

**Fourth**, Rahman has not satisfied the heightened pleading requirements of Rule 9(b).  He does not explain with any particularity how the product labels were misleading to him, let alone a reasonable consumer.  Nor does he allege when, where, or whether he purchased any of the products other than Mott's 100% Apple Juice.  To state a claim under Rule 9(b), Rahman must allege "with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rahman's allegations fall well short of that mark.

**Fifth**, Rahman lacks standing to pursue claims based on products that he did not purchase.  He has not demonstrated that he viewed, relied upon, or was harmed by any misrepresentations on those products' labels.  Moreover, his purchase of Mott's 100% Apple Juice does not give him standing to accuse other products because 100% Apple Juice presents different issues than the products he did not purchase.

**Sixth**, Rahman lacks standing to pursue declaratory and injunctive relief because he has not alleged that he will purchase any Mott's products in the future.  He states that he would not have purchased any of the Mott's "no sugar added" products had he known of the alleged misrepresentations, and has not alleged any intention to purchase those products going forward.  Thus, he is not realistically threatened by a repetition of the harmful conduct from which he seeks

1   relief, which is required by Article III of the Constitution.

2       **Seventh,** Rahman's negligent misrepresentation and quasi-contract claims should be

3   dismissed because he fails to allege a misrepresentation, and because the relief he seeks under his

4   quasi-contract claim is duplicative of his statutory claims.

5       Because Rahman cannot recover, as a matter of law, on any of the claims alleged in his

6   Complaint, all of his claims should be dismissed with prejudice.

7               **II.    SUMMARY OF ALLEGED FACTS**

8       This lawsuit is not a traditional personal injury, warranty, or false advertising case.

9   Rahman does not allege that he was physically harmed by consuming Mott's products.  He does

10  not allege that any of the named products are defective, or that they are unfit for ordinary

11  consumption.  He does not allege that when he purchased Mott's 100% Apple Juice, he received

12  anything other than apple juice.  And he never states that he purchased any of the other products

13  named in his Complaint, including Mott's Natural Applesauce, Mott's Healthy Harvest Sauce

14  Blueberry Delight, Mott's Healthy Harvest Sauce Country Berry, Mott's Healthy Harvest Sauce

15  Granny Smith, Mott's Healthy Harvest Sauce Peach Medley, Mott's Medley's Cherry Berry Fruit

16  and Veggie Snack, Mott's Medleys Peach Apple Fruit and Veggie Snack, or Mott's Snack and Go

17  Strawberry Applesauce Pouch (collectively, the "Sauce Products").

18      Instead, Rahman complains that the labels on each of the nine Mott's products named in

19  his Complaint do not comply with certain technical FDA regulations "promulgated pursuant to

20  the Food, Drug, and Cosmetics Act of 1938" that "specify the precise nutrient content claims

21  concerning sugar that may be made on a food label."  *Id*. at ¶ 2.  Rahman alleges that the Mott's

22  products "bear labels and/or packaging which claim 'No Sugar Added' despite the fact that they

23  are made from concentrated fruit juice and/or fail to indicate they are not low or reduced calorie

24  foods when in fact they are not…."  *Id*. at ¶ 12  According to Rahman, this means that each of the

25  nine products are labeled "in contravention to the requirements set forth under "21 C.F.R. 101,

26  Subpart D, § 101.60(c)(2)(v)" and "21 C.F.R. 101, Subpart D, § 101.60(c)(2)(ii)."  *Id*. at ¶ 11.

27      Based on those alleged violations of federal regulations, Rahman brings state-law causes

28  of action based on California's Unfair Business Practices Act, False Advertising Act, and

Consumer Legal Remedies Act, as well as common law claims for negligent misrepresentation and breach of quasi-contract.  Rahman seeks to certify two classes of California residents who purchased "No Sugar Added" Mott's products: one comprised of consumers who purchased the products even though they contained concentrate; and another comprised of consumers who purchased the products even though they lacked disclaimers notifying consumers that they are not "low calorie" or "calorie reduced" foods.  *Id.* at ¶ 36(1)-(2).[2]

### III.    APPLICABLE LEGAL STANDARDS

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must accept factual allegations as true for purposes of a motion to dismiss, this tenet is "inapplicable to legal conclusions."  *Id.* After stripping away the "conclusory statements" in the complaint, the remaining factual allegations must do more than "create[] a suspicion of a legally cognizable right of action;" they must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (quotations omitted).  In making this "context-specific" determination, the Court must "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Federal Rule of Civil Procedure 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud."  This pleading standard specifically "appl[ies] to claims for violations of the CLRA and UCL," as well as the FAL, where—as here—those claims are based on a fraud theory.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Accordingly, a plaintiff's allegations

---

[2] Rahman's parsing of the classes based on violations of specific regulatory requirements only highlights the reliance of his claims on alleged violations of highly technical regulations that the FDA is better suited to enforce.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 4:13-CV-03482-SI

1    must be "specific enough to give defendants notice of the particular misconduct," including "the

2    'who, what, when, where, and how' of the misconduct charged," *Kearns*, 567 F.3d at 1124

3    (citations omitted), and "the time, place, and specific content of the false representations,"

4    *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations omitted).

5          A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the

6    subject matter jurisdiction of a court to hear a case.  "When [a] district court lacks subject matter

7    jurisdiction over the claim" before it, then "[d]ismissal is appropriate under Rule 12(b)(1)."

8    *Vieira v. Woodford*, No. C 00-0043 PJH, 2002 WL 1226852, at *1 (N.D. Cal. May 30, 2002).

9    "On a rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, [the] plaintiff bears

10   the burden of proof that subject matter jurisdiction exists."  *Grenier v. Spencer*, No. 2:12-cv-0258

11   KJM GGH PS, 2013 WL 211130, at *1 (E.D. Cal. Jan. 18, 2013).  "[J]urisdictional attacks can be

12   either facial or factual."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A "facial attack ...

13   asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

14   jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A Rule

15   12(b)(1) motion should be granted when a plaintiff fails to allege facts sufficient to demonstrate

16   that the plaintiff has standing.  *See White*, 227 F.3d at 1242.

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Rahman fails to allege California state-law claims based on violations of FDA regulations governing "No Sugar Added" claims.

20         All of Rahman's state-law claims are based on his allegations that misconstrue and

21   misapply federal regulations governing use of the words "no sugar added" on Mott's product

22   labels.  *See* Complaint ¶¶ 52, 54, 60–61, 73, 75, 82, 85.[3]  Those state-law claims must be

---

[3] Although not alleged in the Complaint, to the extent Rahman were to allege that Mott's labels are misleading, deceptive, or unlawful for reasons *other* than non-compliance with FDA regulations, his claims would be preempted by the National Labeling and Education Act ("NLEA").  The NLEA expressly preempts "any [state law] requirement for the labeling of food . . . that is not identical to" federal regulations.  21 U.S.C. § 343-1(a)(1)–(3); *see also id.* § 343-1(a)(2) (addressing the percent juice statement that must appear on fruit and vegetable juice).  The FDA's regulations define "not identical to" broadly to mean any "[s]tate requirement directly or indirectly impos[ing] obligations" that are "not imposed by" federal law or that "[d]iffer from those specifically imposed by" federal law.  21 C.F.R. § 100.1(c)(4).  As a result, "[c]onsumer

1  dismissed with prejudice because the Mott's labels fully comply with federal labeling
2  requirements and therefore do not violate California state law.

3          **1.    The FDA has carefully explained when the claim "no sugar added"**
4              **may be used on food and beverage labels.**

5          Congress has granted the FDA exclusive authority to ensure that "foods are ... properly
6  labeled."  21 U.S.C § 393(b)(2)(A).  Pursuant to that authority, the FDA has issued regulations
7  that govern when the term "no sugar added" may appear on a product's label.  21 C.F.R.
8  § 101.60(c)(2)(i)-(v).  A product that uses the phrase "no sugar added" on its label must satisfy
9  five separate requirements, two of which Rahman raises in his Complaint.  First, a product
10 bearing a "no sugar added claim" cannot "contain an ingredient containing added sugars such as
11 jam, jelly, or concentrated fruit juice."  21 C.F.R. § 101.60(c)(2)(ii).  Second, a product bearing a
12 "no sugar added" claim must also bear "a statement that the food is not 'low calorie' or 'calorie
13 reduced' (unless the food meets the requirements for a 'low' or 'reduced calorie' food) and that
14 directs consumers' attention to the nutrition panel for further information on sugar and calorie
15 content."  *Id.* § 101.60(c)(2)(v).

16         All of the Mott's products named in the Complaint comply with FDA requirements
17 concerning use of the ingredient "concentrated fruit juice."  *None* of the products impermissibly
18 contain added sugar.  Moreover, *all* of the products comply with the FDA requirements
19 concerning "low" or "reduced calorie" food labeling because they are reduced calorie foods.
20 Accordingly, Rahman's claims must be dismissed because he has failed to allege any violation of
21 FDA regulations contained on the product labels.

22

---

23 protection laws (such as the UCL) are preempted if they seek to impose requirements" that differ
24 from those mandated by federal law, or if that would be the practical effect of their enforcement.
   *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *8 (N.D. Cal.
25 May 26, 2011) (citing *Wyeth v. Levine*, 555 U.S. 555 (2009)); *see also Pom Wonderful LLC v.
   Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1121–22 (C.D. Cal 2009) (plaintiff cannot
26 "extend[] its claims in a manner that would impose requirements that are different from federal
   standards under the [FDCA] and FDA").  Were Rahman to claim that the use of "no sugar added"
27 on Mott's labels is unlawful under California law for any reason other than non-compliance with
   federal regulations, those claims would be preempted because they would impose labeling
28 requirements that are "not identical to" those imposed by federal law.

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 4:13-CV-03482-SI**

**2.      The Mott's products named in the Complaint comply with the FDA regulation concerning use of the ingredient "concentrated fruit juice."**

All of the Mott's products named in the Complaint comply with the federal requirement that products bearing "no sugar added" labeling "not contain an ingredient containing added sugars, such as ... concentrated fruit juice" or that functionally substitute as sugar.  None of the products contain "sugar" as an ingredient.  Six of the products do not contain any concentrated fruit juice *at all*.  Those products are Mott's Healthy Harvest Sauce Peach Medley, Mott's Healthy Harvest Sauce Granny Smith, Mott's Healthy Harvest Sauce Country Berry, Mott's Healthy Harvest Sauce Blueberry Delight, Mott's Snack and Go Strawberry Applesauce Pouch, and Mott's Natural Applesauce.  The label on each of those products lists all of the ingredients contained in them, and concentrated fruit juice is not listed among those ingredients.  *See* Declaration of Janet Brookner ("Brookner Decl."), Exhs. B-C, F-I.  Rahman has not pointed to *any* added sugar in those products, including "concentrated fruit juice."

Mott's Medleys Peach Apple Fruit and Veggie Snack and Mott's Medleys Cherry Berry Fruit and Veggie Snack contain small amounts of "fruit and vegetable juice concentrates," but, as disclosed on their ingredient statements, these small amounts are only "for color."  Brookner Decl., Exhs.D-E.  FDA regulations expressly allow the use of concentrated fruit and vegetable juice for color in accordance with good manufacturing practices.  *See* 21 C.F.R. § 73.250(a)-(b) ("concentrated or dried" fruit juice "may be safely used for the coloring of foods generally…"); 21 C.F.R. § 73.260(a)-(b) ("concentrated or dried" vegetable juice "may be safely used for the coloring of foods generally…").  Moreover, when using ingredients only for color, FDA regulations require the product label to bear "for color" or "an equally informative term that makes clear that a color additive has been used in the food."  21 C.F.R. § 101.22(k)(2).  And, when using additives for color, the FDA's good manufacturing practices require that "the quantity of the substance added to the food does not exceed the amount reasonably required to accomplish its intended physical, nutritive, or other technical effect in food."  21 C.F.R. § 172.5(a)(1).  That amount is typically very small.

The Mott's Medleys products comply with each of these regulations.  The FDA rule

barring the use of "ingredient[s] containing added sugars" in products labeled "no added sugar" is intended to prevent manufacturers from using ingredients such as "concentrated fruit juice[] for the purpose of *substituting* for sugars that would normally be added to a food…." 21 C.F.R. § 101.60(c)(2)(ii); 58 Fed. Reg. 2302, 2327 (Jan. 6, 1993) (emphasis added).  That intent is reflected in the first requirement for using a "no sugar added" label—that a product contain "[n]o amount of added sugars ... or any other ingredient that contains sugars that *functionally substitute for added sugars*."  21 C.F.R. § 101.60(c)(2)(i) (emphasis added).  Thus, where a product uses concentrated fruit juice to *replace* sugar, the FDA has stated that its rules "preclude[] the use of the 'no sugar added' nutrient content claim" because the representation would decrease consumers' ability to differentiate between those products that "aid consumers in implementing dietary guidelines," and those that do not.  58 Fed. Reg. 2302, 2327 (Jan. 6, 1993).  But, because the Medleys products use minimal amounts of fruit and vegetable juice concentrates only for color, as specifically authorized by FDA regulations, they do not use them "for the purpose of substituting for sugars that would normally be added to a food."  *Id.*  Thus, use of the "no sugar added" claim on the Medleys products is permissible.

Finally, Mott's 100% Apple Juice contains only water, apple juice concentrate, and vitamin C.  *See* Brookner Decl., Exh. A.  Concentrated fruit juice is not an ingredient in Mott's 100% Apple Juice—it is the product itself, with only water and vitamin C added.  The FDA considered just such products when it promulgated its rules regarding use of "no sugar added" on product labels.  It unambiguously stated that "the addition of water to a juice concentrate to produce a single strength juice would not preclude the use of a 'no added sugar' claim."  58 Fed. Reg. 2302, 2328 (Jan. 6, 1993).  Rahman's allegations concerning 100% Apple Juice misinterpret FDA regulations, and are diametrically opposed to the FDA's express position regarding use of the term "no sugar added" on single strength juices made from concentrated fruit juice.

### 3.    The Mott's "no sugar added" products comply with the FDA regulation concerning "reduced calorie" statements.

The Mott's products named in the Complaint also comply with the FDA regulation governing "no sugar added" because they all qualify for a "reduced calorie" label, and therefore

do not require a statement to the contrary.  To be labeled "no sugar added," the FDA requires that a food bear a statement that it is "not 'low calorie' or 'calorie reduced' (*unless the food meets the requirements for a 'low' or 'reduced calorie' food*) and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content."  21 C.F.R. § 101.60(c)(2)(v) (emphasis added).  A food label may make a "reduced calorie" claim when "[t]he food contains at least 25 percent fewer calories per reference amount customarily consumed than an appropriate reference food as described in § 101.13(j)(1)."  21 C.F.R. § 101.60(b)(4)(i).  Under § 101.13(j)(1), an "appropriate reference food" for a "reduced" claim is "a similar food (e.g. potato chips as a reference for potato chips, one brand of multivitamin for another brand of multivitamin)."  21 C.F.R. § 101.13(j)(1); 21 C.F.R. § 101.13(j)(1)(B).  The FDA has defined the reference amount customarily consumed, also called a RACC, for various categories of foods.   21 C.F.R. § 101.12(b) tbl. 2.  The Mott's Sauce Products fall into the "all other fruits" category and have a RACC of 140 grams.[4]

All of the Mott's products qualify as "reduced calorie" foods therefore none of them require a statement concerning calorie content in order to make a "no sugar added" claim.  Under the FDA's definition of "appropriate reference food"—i.e. a "similar food"—Mott's Original Applesauce, which contains added sugar, is an appropriate reference food for all of the Mott's Sauce Products.  Mott's Original Applesauce contains 90 calories per 113 gram serving size. Declaration of Ryan Bangert, Exh. A.  That equates to 112 calories per 140 gram reference amount customarily consumed.[5]  All of the Mott's Sauce Products qualify for a "reduced calorie" claim when compared against this benchmark.

- •    Mott's Snack and Go Strawberry Applesauce contains 40 calories per 90 gram serving, or 62 calories per reference amount customarily consumed.  *See* Brookner Decl., Exh. C. Compared to Mott's Original Applesauce, Mott's Snack and Go Strawberry Applesauce contains

---

[4] The RACC is used as a standard reference from which to calculate the serving sized declared in the nutrition information for a food.

[5] Calories per RACC may be derived by dividing the number of calories in a single serving of a product by the serving size.  That number may then be multiplied by the RACC to yield the number of calories per RACC.  All values contained in this motion have been rounded to the nearest whole number.

over 40 percent fewer calories, thus qualifying it for a "reduced calorie" claim.[6]

• Likewise, Mott's Natural Applesauce contains 50 calories per 112 gram serving, *id*., Exh. B, or 63 calories per reference amount customarily consumed. That too is over 40 percent fewer calories than Mott's Original Applesauce, qualifying the product for a "reduced calorie" claim.

• Similarly, each Mott's "Healthy Harvest" product (Blueberry Delight, Country Berry, Granny Smith, and Peach Medley) contains 50 calories per 111 gram serving, *id*., Exhs. F-I, which equals 63 calories per reference amount customarily consumed. That amount is over 40 percent fewer calories per reference amount customarily consumed than Mott's Original Applesauce.

• Finally, the Mott's Medleys products (Cherry Berry Fruit and Veggie Snack and Peach Apple Fruit and Veggie Snack) each contain 60 calories per 111 gram serving, *id*., Exhs. D-E, or 76 calories per reference amount customarily consumed. These flavored sauce products may also be compared to Mott's Original Applesauce and they contain over 30 percent fewer calories than Mott's Original Applesauce.

Mott's 100% Apple Juice, in turn, qualifies for a "reduced calorie" claim when compared to other 100% juice products. FDA regulations authorize the use of a similar food such as one variety of potato chip for another variety of potato chip on products bearing a "reduced calorie" claim. *See* 21 C.F.R. § 101.13(j)(1)(B). Red grape juice is a similar food to apple juice because both products are beverages that contain juice. Moreover, apple juice and red grape juice are covered by many of the same FDA regulations, including regulations that establish uniform percent juice declarations and common or usual name requirements for beverages that purport to contain juice. *See, e.g.,* 21 C.F.R. §§ 101.30; 102.33. Finally, both products are 100 percent juice—further reinforcing the similarity.

---

[6] In addition, the Mott's Snack and Go Strawberry Pouch contains only forty calories per individual serving. A consumer who consumes the entire container, which is one serving according to the label, will only obtain forty calories from the product. Forty calories is the amount required to make a "low calorie" claim per reference amount customarily consumed. 21 C.F.R. § 101.60(b)(2)(i)(A).

The reference amount customarily consumed for fruit juices is 240 milliliters (8 fluid ounces), which is also the serving size for Mott's 100% Apple Juice.  21 C.F.R. § 101.12(b) tbl. 2.  Mott's 100% Apple Juice has 120 calories per reference amount customarily consumed, Brookner Decl. A, whereas a similar red grape juice contains 160 calories per reference amount customarily consumed, Bangert Decl., Exh. B.  Thus, Mott's 100% Apple juice has 25 percent fewer calories than the comparable red grape juice product, and therefore qualifies for a "reduced calorie" claim.

FDA regulations similarly recognize that 100 percent apple juice contains more than 25 percent less sugar than 100 percent grape juice, as defined by brix level.  58 Fed. Reg. 2431, 2433 (Jan. 6, 1993) ("FDA notes that juices are defined in part by their Brix level or soluble solids content. The soluble solids of juices consist primarily of sugars.").  The brix level for grape juice is 16 while the brix for apple juice is 11.5, or 28 percent lower than the brix for grape juice.  21 C.F.R. § 101.30(h)(1).

Finally, even if Mott's 100% Apple Juice did not qualify for a "low" or "reduced calorie" claim, the words "see side panel for nutrition information" appear adjacent to the "no sugar added" claim on the product label.  Brookner Decl., Exh. A.  The Nutrition Facts panel, in turn, accurately discloses that 100% Apple Juice contains 120 calories per serving.  *Id*.  Rahman has not alleged that the information contained in the Nutrition Facts panel is inaccurate or misleading. Thus, a consumer, such as Mr. Rahman, who "read and reasonably relied upon the product packaging," Complaint ¶ 32, would readily know upon purchase precisely how many calories— and sugar from the natural juice content—Mott's 100% Apple Juice contains.

**B.     Rahman has not alleged facts showing that a reasonable consumer would be deceived by "no sugar added" on Mott's labeling.**

Rahman' claims also fail because he has alleged no facts showing how a reasonable consumer could be misled by Mott's "no sugar added" labeling.  Rahman rests his claims on alleged violations of FDA regulations.  Merely alleging violations of FDA regulations, however, is not sufficient to make out claims for consumer fraud.  *See Mason v. Coca-Cola Co*., 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011) ("[N]ot every regulatory violation amounts to an act of

consumer fraud."). Rather, Rahman must allege facts showing that "'it is probable that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled'" by Mott's labels. *Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033-H, 2012 WL 1512106, at *3 (S.D. Cal. Apr. 16, 2012) (quoting *Lavie v. Procter and Gamble Co*, 105 Cal. App. 4th 496, 508 (2003). Rahman's allegations fall well short of that mark and should be dismissed.[7]

### 1. Rahman fails to allege how or why he was misled.

Rahman never explains how or why Mott's alleged violations of the FDA's regulations governing "no sugar added" claims could mislead a reasonable consumer. Rahman alleges that, as a diabetic, he "actively seeks out products that are low in sugar and/or contain no added sugars," and that he would not have purchased Mott's products "had [he] not observed the No Sugar Added Label." Compl. ¶¶ 30, 32. He further claims that he "did not know at the point of sale" that the Mott's products "were misbranded and bore food labeling claims that Mott's was not legally permitted to make." *Id.* ¶ 33. Rahman never alleges, however, what meaning he attributed to the "no sugar added" statement or what that statement led him to believe about the Mott's products. Nor does he allege that he was aware of the technical regulatory meaning of that term. Rahman also does not allege how the absence of "not a low calorie food" or "not a reduced calorie food," which he erroneously believes that FDA regulations require, might have misled him. In short, based on Rahman's allegations, it is unclear how or why he or any other consumer was misled by Mott's "no sugar added" labeling. *See Mason*, 774 F. Supp. 2d at 705 n.4 (noting that the plaintiff did not "allege that consumers bought the product because they knew of an attributed something meaningful to the regulatory term" at issue). His claims should therefore be

---

[7] Dismissal of UCL, FAL, and CLRA claims is appropriate on a 12(b)(6) motion "where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." *Hairston v. South Beach Beverage Products Co.*, 12-cv-1429 JFW, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (dismissing claims where "no reasonable consumer [was] likely to think that 'Original Vanilla' refers to a natural ingredient")*; Werbel v. Pepsico, Inc.*, No. 09-04456, 2010 WL 2673860, at *5 (N.D. Cal. July 2, 2010) (holding that plaintiff "failed to establish that a reasonable consumer would likely be deceived into believing that Cap'n Crunch derives some of its nutritional value from fruit").

1    dismissed on this basis alone.

2              **2.        A reasonable consumer would not be misled by the accurate "no sugar**

3                          **added" labeling on the Mott's products.**

4          Rahman also fails to allege facts to demonstrate that Mott's labels are anything but

5    accurate with respect to sugar content.  "In cases where a product's front label is *accurate* and

6    *consistent with the statement of ingredients*, courts routinely hold that no reasonable consumer

7    could be misled by the label, because a review of the statement of ingredients makes the

8    composition of the food or drink clear."  *See Viggiano v. Hansen Natural Corp.*, No. CV 12-

9    10747 MMM (JCGx), 2013 WL 2005430, at *9 n.38 (C.D. Cal. May 13, 2013) (emphases

10   added).  No reasonable consumer would be misled by the "no sugar added" labeling because that

11   statement is supported by and agrees with the statement of ingredients.

12         Rahman alleges that Mott's products contain added sugar because they contain the

13   ingredient "concentrated fruit juice."  That allegation is facially incorrect with respect to the

14   Healthy Harvest, Natural Applesauce, and Snack and Go products because none of them contain

15   concentrated fruit juice.  Brookner Decl., Exhs. A-C, F-I.  Moreover, the product labels accurately

16   disclose the amount of sugar that naturally exists in those products.  *Id.*

17         Mott's 100% Apple Juice, in turn, does not contain *added* sugars because 100% apple

18   juice from concentrate *is* the product.  The label expressly states that the product is "juice from

19   concentrate," and the ingredient panel lists three ingredients: water, apple juice concentrate, and

20   ascorbic acid (vitamin C).  *Id.*, Exh. A.  Moreover, the product's label prominently features

21   images of apples, which are well-known to contain naturally-occurring sugar, and the label directs

22   consumers to the nutrition facts panel which accurately discloses the amount of sugar from apples

23   (not "added sugar") in the product.  *Id.*  Viewing the entire product label, no reasonable consumer

24   could be misled because Mott's 100% Apple Juice does not contain "added sugar," and the

25   naturally-occurring sugars in the juice are fully and accurately disclosed.

26         Finally, Mott's Medleys products contain a minimal amount of fruit and vegetable juice

27   concentrate to color, not sweeten, the products.  The ingredient list on the product labels

28   expressly list as an ingredient, "fruit and vegetable juice concentrates (*for color*)," in addition to

1    the other fruit and vegetable ingredients comprising the sauce, and correctly discloses the amount

2    of sugar from the fruit and vegetable ingredients in the product.  *Id.*, Exhs. D-E.  (emphasis

3    added).   Viewing the label as a whole, no reasonable consumer would believe that Medleys

4    products contain "added sugar" in the form of fruit juice concentrate.

5                    **3.      No reasonable consumer would be misled by the accurate disclosure of**

6                    **caloric content on the Mott's labels.**

7            Rahman likewise fails to allege facts showing that Mott's "no sugar added" labels would

8    mislead reasonable consumers about the caloric content of Mott's products.  The nutrition facts

9    panel on the product labels accurately lists the number of calories contained per serving size in

10   each product, *id.*, Exhs. A-I, and the Mott's 100% Apple Juice label even includes the words "See

11   back panel for nutrition information" immediately beside the words "no sugar added."  *Id.*, Exh.

12   A.  Rahman points to nothing on the Mott's labels that affirmatively misrepresent the caloric

13   content of the products.  Nor does Rahman allege that a reasonable consumer would know the

14   technical requirements of the FDA's nutrient content regulations, or otherwise be misled by "no

15   sugar added" labeling to believe that the Mott's products contain fewer calories than the amounts

16   listed on the ingredient panels.[8]

17          Courts in this District have dismissed similar suits that attempt to piggy-back consumer

18   fraud claims atop alleged violations of technical FDA disclosure requirements.  In *Delacruz v.*

19   *Cytosport, Inc.*, No. C 11-3532 CW, 2012 WL 2563857, at *4, *8 (N.D. Cal. June 28, 2012), the

20   Court held that the phrase "0g Trans Fat" was not misleading, even when not accompanied by a

21   required disclosure statement "See nutrition information for saturated fat content."  The Court

22   concluded that the violation was an "alleged distraction [but]…not an actionable claim."  *Id.* at 8.

23   In this case, Mott's complied with the "low" or "reduced calorie" disclosure requirements.  But

24   even if Mott's had not complied, that noncompliance would be nothing more than a technical

25   violation, and would not give rise to any deceptive or misleading conduct sufficient to rise to the

26   level of actionable consumer fraud.

27   _____

28   [8] Any suggestion to the contrary with respect to the Mott's Sauce Products would be expressly
     preempted as those products are either "low" or "reduced calorie" foods per FDA regulations.

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 4:13-CV-03482-SI**

C.      **Rahman's allegations fail to comply with Rule 9(b)**

Rahman's claims should also be dismissed because they fail to comply with Federal Rule of Civil Procedure 9(b)'s heightened requirements for alleging fraud.  Alleged violations of the UCL, FAL, and CLRA "are subject to Rule 9(b) of the Federal Rules of Civil Procedure" when those allegations are "grounded in fraud."  *Kearns*, 567 F.3d at 1122.  "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud even if the word 'fraud' is not used."  *Id*. at 1124 (quoting *Vess*, 317 F.3d at 1105.).  A complaint is "grounded in fraud" where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim."  *Id*. at 1125.

Throughout his Complaint, Rahman repeatedly describes the labels on the Mott's products as "non-conforming, misleading, and deceptive."  Compl. at ¶¶ 2, 16.  Likewise, he repeatedly describes the products as "misbranded."  Id. at ¶¶ 1, 13, 33.  He contends that Mott's has "prominently featured" the words "no sugar added" on many of its product labels "[t]o profit from the public's well placed increasing focus on sugar consumption and overall calorie content."  *Id*. at ¶ 6.  These allegations squarely ground Rahman's Complaint in fraud and subject his allegations to the requirements of Rule 9(b).

Even though Rahman's claims are grounded in fraud, he fails to identify the "who, what, when, where, or how" of the allegedly fraudulent representations related to the products he identifies.  *See Vess*, 317 F.3d at 1106.  Compl. at ¶ 12.  Rahman:

- fails to identify <u>how</u> any of the eight Sauce Products listed in Paragraph 12 of his Complaint might violate FDA regulations;

- alleges that the products he identifies are misbranded, but he completely fails to specify <u>what</u> the alleged misbranding on products he identifies misled him to believe;

- fails to allege <u>when</u> or <u>whether</u> he purchased the Sauce Products;

- fails to allege <u>where</u> he purchased the products other than Mott's 100% Apple Juice;

- fails to allege <u>how</u> he was allegedly misled by any of the Mott's products that he

1    has identified by failing to state <u>what</u> he was allegedly misled to believe and <u>how</u>

2    he came to those allegedly misleading beliefs.

3    Rahman has not identified the "who, what, when, where, and how" of the alleged fraud,

4    and therefore impermissibly leaves Mott's to guess at which alleged violations of FDA rules

5    apply to which products, what Rahman was purportedly misled to believe, and how he came to

6    those beliefs.  He has failed to make "the circumstances constituting the alleged fraud ... 'specific

7    enough to give defendants notice of the particular misconduct ... so that they can defend against

8    the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106

9    (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

10   Similarly deficient claims were recently dismissed by a court in this District.  In *Trazo v.*

11   *Nestle USA, Inc*., No. 12-CV-2272 PSG, 2013 WL 4083218, at *8 (N.D. Cal. Aug. 9, 2013) the

12   court dismissed the plaintiff's allegations that "Nestle mislabeled certain products as 'no sugar

13   added.'"  Much as Rahman has done in this case, the plaintiff in *Trazo* "plead that 'Defendant's

14   Eskimo Pie and Juicy Juice do not meet the requirements for a 'low' or 'reduced calorie' food"

15   but failed to "explain why the products do not meet the 'low-calorie' guidelines of 21 C.F.R.

16   § 101.60(b)(2)."  Similarly, Rahman has entirely failed to identify how the Sauce Products fail to

17   comply with FDA regulations, and does not explain how he was misled by the labeling on the

18   100% Apple Juice product.  Because the court cannot accept "[t]hreadbare recitals of the elements

19   of a cause of action, supported by mere conclusory statements," Rahman's claims must be

20   dismissed.  *Trazo*, 2013 WL 4083215, at *8 (quoting *Iqbal*, 556 U.S. at 678).

21   **D.      Rahman lacks standing to sue on products that he did not purchase.**

22   Rahman alleges that he purchased Mott's 100% Apple Juice.  Compl. ¶ 32. He does not,

23   however, allege that he purchased any of the Sauce Products that he identifies in his Complaint,

24   stating only that he purchased "one or more of the Class Products." *Id*.  He therefore lacks

25   standing to pursue his claims relating to all of the products other than Mott's 100% Apple Juice.

26   District courts in the 9th Circuit have frequently held that plaintiffs who have not

27   purchased products that they complain of or that complain of advertising that they have not relied

28   upon lack standing to bring their claims.  For example, in *Johns v. Bayer Corp*., No. 09-cv-1935

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 4:13-CV-03482-SI**

1    DMS (JMA), 2010 WL 476688, at *4-5 (S.D. Cal. Feb. 9, 2010) the court held that a plaintiff

2    could not "expand the scope of his claims to include a product that he did not purchase or

3    advertisements relating to a product that he did not rely upon" because "[t]he statutory standing

4    requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized

5    allegations."   Similarly, in *Carrea v. Dreyer's Grand Ice Cream, Inc*., No. C 10-01044 JSW,

6    2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011), the court dismissed claims where the plaintiff

7    failed to allege that he had purchased "or otherwise suffered any injury or lost money or

8    property" with respect to certain products named in his complaint.  *See also Dvora v. General

9    Mills*., No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *8 (holding that plaintiff lacked

10   standing "with respect to claims based on statements he did not rely on."); *Lam v. General Mills*,

11   859 F. Supp.2d 1097, 1101 (N.D. Cal. 2012) (holding that, where plaintiff had related to unnamed

12   "other similar products," the defendant "should not have to guess at which of these other brands

13   are the subject of this suit.").

14          Despite only alleging that he purchased Mott's 100% Apple Juice, Rahman has included

15   in his Complaint a host of other products that raise discrete issues.  He lacks standing to bring

16   claims related to those products.  *First*, the Mott's 100% Apple Juice that Rahman alleges he

17   purchased is a juice product rather than a sauce product.  *Second*, the Sauce Products raise

18   discrete sets of issues because they comply with the regulations in different ways than Mott's

19   100% Apple Juice (e.g. many of the Sauce Products comply with the "concentrated fruit juice"

20   regulation because they contain no concentrated fruit juice whereas Mott's 100% Apple Juice

21   complies because it is concentrated fruit juice).  *Third*, the different products contain substantially

22   different ingredients.  *Fourth*, the products' labels present different issues. (e.g. the label of

23   Mott's 100% Apple Juice directs consumers to the products nutrition panel while the other

24   product labels do not).  In light of these important differences, Rahman's alleged purchase of

25   100% Apple Juice is insufficient to confer standing for him to allege claims against the Sauce

26   Products, which he did not purchase.

27

28

1    **E.**     **Rahman lacks standing to seek declaratory and injunctive relief because he is**

2          **not threatened by any future injury.**

3          Rahman has not alleged that he intends to continue purchasing the Mott's products that he

4    believes are misleadingly labeled or that the labeling he complains of is likely to cause him future

5    injury.  To the contrary, he alleges that "he would not have purchased" the products had he been

6    aware of the alleged misrepresentations on their labels.  Compl. at ¶ 32.  Accordingly, Rahman

7    lacks Article III standing to seek injunctive relief.

8          At the pleading stage, a plaintiff bears the burden to plead facts showing that he has

9    Article III standing to pursue the relief that he seeks.  *See Park v. Los Angeles Unified Sch. Dist.*,

10   No. 01-55135, 33 Fed. App'x 291, 292 (9th Cir. Mar. 21, 2002).  To meet the Article III standing

11   requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and

12   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

13   traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

14   speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc.*

15   *v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 180–81 (2000).  If a plaintiff fails to allege

16   standing, his claims should be dismissed under Rule 12(b)(1).

17         A plaintiff must demonstrate standing for each type of relief sought.  *Summers v. Earth*

18   *Island Inst.*, 555 U.S. 488, 493 (2009).  To obtain a declaratory judgment or injunction, a plaintiff

19   must demonstrate that he is "realistically threatened by a *repetition* of the violation" from which

20   he seeks relief.  *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong v.*

21   *Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001), *abrogated on other grounds*, 543 U.S. 499 (2005)

22   (emphasis in original)).  "Past exposure to illegal conduct does not in itself show a present case or

23   controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse

24   effect."  *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

25         Courts in this District and others in the 9th Circuit have often applied these standards to

26   conclude that named plaintiffs lack standing to seek declaratory and injunctive relief on behalf of

27   putative classes.  For example, in *Wang v. OCZ Technology Group, Inc.*, 276 F.R.D. 618, 626

28   (N.D. Cal. 2012), the court dismissed the plaintiff's claims for injunctive relief brought under

- 18 -

California law alleging that the defendant's solid state drives were misleadingly advertised. The court held that the plaintiff lacked standing to seek injunctive relief because "any loss of value" to the device the plaintiff purchased had "already occurred." *Id.* If the plaintiff "paid an inflated price for the product based on [defendant's] alleged misrepresentations" he was "in no danger of doing so again," and the plaintiff "had not alleged even a likelihood that he would once again purchase" the product at issue. *Id.* Because the possibility of future harm to the plaintiff was "speculative at best" his claims were "certainly insufficient to warrant injunctive relief." *Id.*

In *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007), the court ordered the plaintiff to show cause why her claims for declaratory and injunctive relief under the UCL and CLRA pertaining to Wal-Mart's alleged false advertising concerning the thread count of its linens should not be dismissed for lack of standing. The court found that even if the plaintiff had been injured by Wal-Mart's advertising, "it is unclear how prospective relief will redress her injury, since she is now fully aware of the linens' thread count." *Id.* at 951. The court further found that if the plaintiff herself could "not seek injunctive relief, the standing of unnamed class members will not suffice to give the Court jurisdiction to grant it." *Id.* (citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).[9]

Similarly, in *Campion v. Old Republic Home Protection Co.*, 861 F. Supp. 2d 1139 (S.D. Cal. 2012), the court held that the plaintiff lacked Article III standing to pursue injunctive relief under the UCL against a home warranty plan provider. The court found that the plaintiff could "not establish that he is under any threat of suffering actual or imminent future harm" because he no longer owned one of the offending policies and "testified that he does not ever intend to purchase another one." *Id.* at 1149–50. The court found that "even if Plaintiff were to purchase another home warranty plan from Defendant, he now has knowledge of Defendant's alleged misconduct," and therefore "cannot show he is realistically threatened by a repetition of the alleged violation." *Id* at 1150. The court also rejected the plaintiff's argument that standing should be evaluated under the more lenient California state law standard, finding that "Article III imposes a jurisdictional requirement that is more stringent than the UCL, and which, with respect

---

[9] Shortly after the court entered its show cause order, the parties filed an agreed stipulation to dismiss the case.

1    to Plaintiff's claim for injunctive relief, is not satisfied." *Id.* at 1149.

2         Like the plaintiffs in *Wang*, *Cattie*, and *Campion*, Rahman lacks standing to pursue his

3    claims for declaratory and injunctive relief.   He is fully aware of Mott's alleged

4    misrepresentations, alleges that he would not have purchased any of the products had he known

5    of the purported misrepresentations, and is under no "threat of suffering actual or imminent future

6    harm" as a result of Mott's allegedly misleading labeling practices. *Campion*, 861 F. Supp. 2d at

7    1150.  Because Rahman cannot satisfy the threshold requirements that he plead facts sufficient to

8    demonstrate standing, his claims must be dismissed.

9         **F.     Rahman's Claims for Negligent Misrepresentation and Quasi-Contract**

10             **Likewise Fail**

11         Rahman's Negligent Misrepresentation Claim fails because he has not alleged the

12   elements of a cause of action for negligent misrepresentation.  Under California law, the elements

13   of negligent misrepresentation include: "(1) a misrepresentation of a past or existing material fact,

14   (2) without reasonable grounds for believing it to be true, (3) with intent to induced another's

15   reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance on thereon

16   by the party to whom the misrepresentation was directed, and (5) damages." *Neilson v. Union*

17   *Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2005) (quoting *B.L.M. v. Sabo &*

18   *Deitsch*, 55 Cal. App. 4th 823, 834 (1997).  Rahman's claims fail because there are no

19   misrepresentations on any of the Mott's products identified by Rahman.  This claim also fails

20   because it is not pled with particularity as required by Rule 9(b).  *Neilson*, 290 F. Supp. at 1141

21   (citing *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal.

22   1999).

23         Rahman's claims for quasi-contract fail because "a claim for quasi-contract is

24   synonymous with one for unjust enrichment." *Bernardi v. JPMorgan Chase Bank, N.A.*, No. 11-

25   cv-04212 EJD, 2012 WL 2343679, at *3 (N.D. Cal. June 20, 2012).  As such, a claim for breach

26   of quasi-contract "is not an independent cause of action under California law." *In re Toyota*

27   *Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp.2d

28   1145, 1193 (C.D. Cal. 2010).  A quasi-contract claim is unavailable if there is an adequate

remedy at law, such as a claim under the CLRA or UCL.  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1271 (C.D. Cal. 2007) (dismissing unjust enrichment claim with prejudice where plaintiff alleged claims for fraud, violations of the CLRA, and violations of the UCL on the grounds that "[p]laintiff will be able to pursue his remedies through those claims."); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752, 763–764 (E.D. Mich. 2009) (dismissing unjust enrichment claim where express warranty defined the parties' rights); *In re Facebook PPC Adver. Litig.*, No. 5:09-cv-03043, 2010 WL 1746143, at *6 (N.D. Cal. Apr. 22, 2010) (dismissing unjust enrichment claim where express contract defined the parties' rights).  Here, Rahman's quasi-contract claim is improper because it merely duplicates the remedies already available under his statutory claims.

## V.    CONCLUSION

Rahman's Complaint suffers from multiple defects that warrant dismissal.  All of his claims fail because the products that he has identified plainly comply with the FDA's regulations he has identified governing the use of the words "no sugar added."  Rahman's claims also fail because he has done nothing more than identify alleged technical violations of FDA rules without pointing to false or misleading conduct.  Without more, he cannot support a claim under California law.  Rahman's claims also fail for the independent reasons that, as a matter of law, no reasonable consumer would be misled by the labels of the products he identifies.  In addition, Rahman's claims are not pled with the particularity required by Rule 9(b), Rahman lacks standing to sue on the products that he fails to allege that he purchased, and he also lacks standing to sue for declaratory and injunctive relief because he is not threatened with future harm.  Rahman's negligent misrepresentation and quasi-contract claims should likewise be dismissed because he has failed to plead facts to support to elements of those claims.

Respectfully submitted,

1   DATED:          August 30, 2013              BAKER BOTTS L.L.P.

2
                                                */s/ Van H. Beckwith*
3                                               Van H. Beckwith
                                                Attorney for Defendants
4                                               MOTT'S L.L.P. and
                                                DR PEPPER SNAPPLE GROUP, INC.
5

6

7                                  PROOF OF SERVICE

8
        The undersigned hereby certifies that, on August 30, 2013, the foregoing document was
9
electronically filed using the CM/ECF system, and will be served electronically on all parties that
10
have appeared in the action, via the automated generation and e-mailing of a Notice of Electronic
11
Filing (NEF) by the CM/ECF System.
12

13
                                                */s/ Van H. Beckwith*
14                                              Van H. Beckwith
                                                Attorney for Defendants MOTT'S L.L.P. and
15                                              Dr Pepper Snapple Group, Inc.
                                                Email: van.beckwith@bakerbotts.com
16

17

18

19

20

21

22

23

24

25

26

27

28