IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MOHAMMED RAHMAN, individually, and on
behalf of other members of the general public
similarly situated,

          Plaintiff,

  v.

MOTT'S LLP, a Delaware limited liability
partnership; and DOES 1 through 10, inclusive,

          Defendants.
_____/

No. CV 13-3482 SI

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Now before the Court is defendant Mott's LLP's motion for summary judgment, scheduled for hearing on October 17, 2014. Docket No. 68. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons below, the Court **GRANTS** in part and **DENIES** in part Mott's motion to dismiss.

## BACKGROUND

### I.   Procedural Background

This is a consumer class action. Defendant Mott's is the manufacturer of various food products containing the statement "No Sugar Added" on their labels and/or packaging. Docket No. 48, Second Amended Complaint ("SAC") ¶¶ 1-2, 6. Plaintiff Mohammed Rahman alleges that the use of the statement "No Sugar Added" on Mott's 100% Apple Juice does not comply with the applicable Food and Drug Administration ("FDA") regulations, specifically 21 C.F.R. § 101.60(c)(2). *Id.* ¶¶ 2, 8-12.

**United States District Court**
For the Northern District of California

1   Plaintiff further alleges that defendant's failure to comply with the FDA regulations violates

2   California's Sherman Law ("Sherman Law"), California Health and Safety Code § 109875 et seq. *Id.*

3   ¶¶ 2, 13-16.  Plaintiff alleges that he purchased Mott's Original 100% Apple Juice after reading and

4   relying on the product's "No Sugar Added" labeling and after observing that a competitor's 100% apple

5   juice did not contain a "No Sugar Added" claim.  *Id.* ¶ 31.  Plaintiff alleges that he would not have

6   purchased as much of the product as he did if it did not contain the "No Sugar Added" label.  *Id.* ¶ 59.

7   On June 13, 2013, plaintiff filed a class action complaint in San Francisco County Superior Court

8   against defendants Mott's and Dr. Pepper Snapple Group, Inc. ("Dr. Pepper").  Docket No. 1-1, Compl.

9   ¶¶ 67-76.  On July 26, 2013, defendants removed the action to this Court pursuant to 28 U.S.C.

10  § 1441(b), based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Docket No. 1,

11  Notice of Removal.  On August 30, 2013, plaintiff voluntarily dismissed Dr. Pepper.  Docket No. 21.

12  On August 30, 2013, defendant Mott's filed a motion to dismiss, Docket No. 22, and on September 30,

13  2013, plaintiff filed a first amended complaint ("FAC"), mooting the motion to dismiss.  Docket No. 29.

14  Defendant Mott's then moved to dismiss the FAC, Docket No. 31, and on January 29, 2014, the Court

15  granted the motion in part, with leave to amend.  Docket No. 46.

16  On February 24, 2014, plaintiff filed a second amended class action complaint ("SAC"), alleging

17  causes of action for: (1) violation of California's Unfair Competition Law ("UCL"), California Business

18  and Professions Code § 17200 et seq; (2) violation of California's False Advertising Law ("FAL"),

19  California Business and Professions Code § 17500 et seq; (3) violation of California's Consumers Legal

20  Remedies Act ("CLRA"), California Civil Code § 1750 et seq; (4) negligent misrepresentation; and (5)

21  breach of quasi-contract.  Docket No. 48, SAC.  Mott's moved to dismiss the SAC, Docket. No. 49, and

22  on April 8, 2014, the Court denied the motion. Docket No. 54. Now before the Court is defendant's

23  motion for summary judgment. Docket No. 68.

24

25  **II.      Plaintiff's Mislabeling Allegations**

26  All of Rahman's statutory and common law claims are premised on his contention that, by

27  including "No Sugar Added" on the product label, Mott's 100% Apple Juice is mislabeled under

28  California's Sherman Law and FDA regulations.  FAC ¶¶ 55, 63-64, 76-78, 85, 90.  California's

Sherman Law broadly prohibits the misbranding of food. *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008) (citing Cal. Health & Safety Code § 110765). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 ("FDCA") as the food labeling regulations of California. *Id.* at 1087; Cal. Health & Safety Code § 110100(a); *see also* Cal. Health & Safety Code §§ 110665, 110670. The relevant FDCA labeling regulation, 21 C.F.R. § 101.60(c)(2), provides:

> The terms "no added sugar," "without added sugar," or "no sugar added" may be used only if:
>
> (i) No amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and
>
> (ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and
>
> (iv) The food that it resembles and for which it substitutes normally contains added sugars; and
>
> (v) The product bears a statement that the food is not "low calorie" or "calorie reduced" (unless the food meets the requirements for a "low" or "reduced calorie" food) and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content.

Plaintiff alleges that Mott's fails to comply with section 101.60(c)(2)(v) because Mott's 100% Apple Juice does not state on its labels that it is not "low calorie" or "calorie reduced," as defined by 21 C.F.R. §§ 101.60(b)(2)(i)(A) and 101.60(b)(4)(i). SAC ¶ 12. Plaintiff further alleges that Mott's fails to comply with section 101.60(c)(2)(vi) because Mott's 100% Apple Juice does not resemble or substitute for any foods that typically contain added sugars.[1] *Id.* ¶ 11.

---

[1]Rahman asks the Court to take judicial notice of the fact that (1) Mott's 100% Apple Juice "resembles and substitutes for" apple juice from concentrate, and (2) that apple juice from concentrate does not "normally contain added sugar." Docket No. 78. The Court declines to take judicial notice of these facts because they are subject to "reasonable dispute," Fed. R. Evid. 201(b), and in fact involve "central and disputed issues" in this case. *Cactus Corner LLC v. U.S. Dep't of Agriculture*, 346 F. Supp. 2d 1075, 1098 (E.D. Cal. 2004), *citing U.S. v. Baker*, 641 F. 2d 1311, 1316 (9th Cir. 1981) ("A matter is not properly subject to judicial notice by the court if it involves a central and disputed issue.").

1    Rahman alleges that because the labels of competing apple juices did not contain a "No Sugar

2    Added" statement, he concluded that this differentiated Mott's 100% Apple Juice from the competition

3    as a less sugared, healthier product. *Id.* ¶¶ 31, 33, 35. Rahman alleges that if Mott's 100% Apple Juice

4    had been labeled in accordance with FDA regulations, he would not have been misled as to its sugar

5    content, and as a result would have purchased  smaller quantities of it. *Id.* ¶ 59.

6

7                                    **LEGAL STANDARD**

8    Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and

9    any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

10   to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of

11   demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

12   323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving

13   party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that

14   there is an absence of evidence to support the non-moving party's case.  *Id.* at 325.

15   Once the moving party has met its burden, the burden shifts to the non-moving party to "set out

16   'specific facts showing a genuine issue for trial.'"  *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)).  To

17   carry this burden, the non-moving party must "do more than simply show that there is some

18   metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

19   475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there

20   must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v.*

21   *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

22   In deciding a summary judgment motion, the Court must view the evidence in the light most

23   favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.

24   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from

25   the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  *Id.*

26   However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

27   genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d

28   730, 738 (9th Cir. 1979).  The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

United States District Court
For the Northern District of California

4

**DISCUSSION**

Defendant moves for summary judgement on four grounds: (1) Rahman did not suffer damages as a result of purchasing and consuming Mott's 100% Apple Juice; (2) Rahman lacks Article III standing to seek injunctive relief; (3) Rahman did not rely on the words "No Sugar Added" when choosing to purchase and consume Mott's 100% Apple Juice; (4) Rahman has failed to introduce evidence showing that the words "No Sugar Added" on the label are misleading to a reasonable consumer. Each argument is addressed in turn.

**I.    Damages**

Mott's argues that Rahman's claims should be dismissed because he has failed to articulate a theory of damages, and because in his testimony Rahman disclaimed any desire to receive monetary relief in this lawsuit. Docket No. 68 at 7-12.

To establish statutory standing under the UCL, FAL, and CLRA, a plaintiff must demonstrate that he has suffered monetary damages. Under the UCL, a litigant must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition" in order to have statutory standing. Cal. Bus. & Prof. Code § 17204. The FAL requires that a litigant have "suffered injury in fact and has lost money or property as a result of a violation of this chapter." Cal. Bus. & Prof. Code § 17535.  The CLRA confers standing on "[a]ny consumer who suffers any damage as a result of the . . . act, or practice declared to be unlawful." Cal. Civ. Code § 1780; Aron v. U-Haul Co. of California, 143 Cal. App. 4th 796, 802, (2006).

The California Supreme Court has explained that "[t]here are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). Specifically, in *Kwikset* the California Supreme Court held that "a consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204

5

United States District Court
For the Northern District of California

1  by alleging . . . that he or she would not have bought the product but for the misrepresentation." Id. at

2  330; see also *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer

3  purchases merchandise on the basis of false price information, and when the consumer alleges that he

4  would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL

5  and FAL because he has suffered an economic injury.").

6        Rahman alleges that he suffered damages because the "No Sugar Added" statement caused him

7  to purchase more of the product than he otherwise would have.  SAC ¶ 59.  In response, Mott's argues

8  "[e]ven if that were true, simply buying more of a product that one 'enjoyed,' 'wanted,' and fully

9  consumed, see id. at 121:22-123:4,  is not a valid theory of damages." Docket No. 68 at 9. This Court

10  previously rejected that argument:

11          . . . Plaintiff alleges that he would not have purchased as much of the product as he did
           but for the misrepresentations. Thus, plaintiff alleges that he entered into more
12          transactions and parted with more money than he would have absent the
           misrepresentations. "That increment, the extra money paid, is economic injury and
13          affords the consumer standing to sue." *Kwikset*, 51 Cal. 4th at 330. Accordingly,
           plaintiff's allegations are sufficient to plead economic injury, and the Court denies
14          defendant's motion to dismiss these claims for failure to adequately allege injury and
           damages.

15  Docket  No. 54 at 9.

16        Rahman has testified that after seeing the "No Sugar Added" statement he began to increase his

17  purchases of Mott's 100% Apple Juice. Docket No. 68-3 at 210, 212. More specifically, he testified that

18  he was buying two to three bottles of Mott's 100% Apple Juice every two weeks, but began purchasing

19  three to four bottles every two weeks upon noticing the "No Sugar Added" statement on the label. *Id.*

20  at 213-15. Rahman further testified that he typically paid between three to five dollars per bottle. *Id.* at

21  166. Testimony from the plaintiff as to how much he spent on the product is competent evidence of

22  damages; he need not furnish sales receipts or other extrinsic evidence. *See Ogden v. Bumble Bee Foods*,

23  LLC, 5:12-CV-01828-LHK, 2014 WL 27527  at *13 (N.D. Cal. Jan. 2, 2014). Rahman has provided an

24  estimate of how much he spent on Mott's 100% Apple Juice (three to five dollars per bottle), as well as

25  the incremental increase in his expenditures that are attributable to the allegedly misleading labeling

26

27

28

United States District Court
For the Northern District of California

1  (approximately one additional bottle every two weeks). This evidence is sufficient to establish damages

2  for purposes of statutory standing under the UCL, CLRA, and FAL.[2]

3

4  **II.    Article III Standing for Injunctive Relief**

5           Mott's argues that Rahman lacks Article III standing to seek injunctive relief. Docket No. 68 at

6  12-15.  Rahman alleges, at SAC ¶ 32, that he has developed a liking for and interest in Mott's Apple

7  Juice and accordingly "intends to purchase Mott's 100% Apple Juice in the future, but only in reduced

8  amounts consistent with his dietary restrictions."[3]

9           As discussed above, the UCL, CLRA, and FAL require a plaintiff to show he has suffered injury

10 and incurred damages in order to confer statutory standing (Section I. Damages, *supra*). Passed by the

11 voters in 2004, Proposition 64 put these standing requirements in place in order to curtail frivolous

12 lawsuits under California's unfair competition laws. "The California voters identified the gateway for

13 these abuses as the unaffected plaintiff, which was often the sham creation of attorneys, and expressed

14 their intent to prohibit private attorneys from filing lawsuits for unfair competition where they have no

15 client who has been injured in fact under the standing requirements of the United States Constitution."

16 *Anunziato v. eMachines*, Inc., 402 F. Supp. 2d 1133, 1138-39 (C.D. Cal. 2005) (internal citations

17 omitted). Prop 64 was also aimed at preventing individual citizens from bringing suits on behalf of the

18 public at large, and thus declares that "only the California Attorney General and local public officials

19 [are] authorized to file and prosecute actions on behalf of the general public." Prop. 64 §1(f); *Profant v.*

20 *Have Trunk Will Travel*, CV 11-05339-RGK OPX, 2011 WL 6034370 at * 2  (C.D. Cal. Nov. 29, 2011)

21 ("To the extent Plaintiffs attempt to bring their claims on behalf of the public, their claims are barred by

22 Proposition 64.");  *see also Californians For Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228

23 (2006).

24          In the wake of Prop 64, in order to have statutory standing to complain about unlawful or

25 deceptive behavior under the UCL, CLRA, and FAL, a plaintiff must demonstrate some causal nexus

26

27          [2]  The Court finds unpersuasive Mott's argument that summary judgment should be granted
    because Rahman testified that the only thing he wants "out of the lawsuit [is] for Mott's to change their
28  labeling," and that he does not personally "want" any money from Mott's. Docket No. 68-3 at 119.

          [3]  Plaintiff alleges that he has "Type 2 Diabetes."  SAC, ¶ 29.

United States District Court
For the Northern District of California

between the unlawful or deceptive act and damages incurred by the plaintiff. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641(2009) ("Thus, the statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result."). Rahman's attempt to rely on past injury to provide statutory standing for injunctive relief (without showing a likelihood of future harm) is inconsistent with Prop 64's prohibition on the ability of individuals to file lawsuits "on behalf of the public." However, even if the UCL, CLRA, and FAL can be read to confer statutory standing for injunctive relief on a plaintiff, suing in state court, who suffers no risk of future harm, this federal Court, as a court of limited jurisdiction, must ensure strict compliance with the requirements of Article III. *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.").

To have standing to obtain injunctive relief, a plaintiff must allege that a "real or immediate threat" exists that he will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("[T]o establish standing to pursue injunctive relief, . . . [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future."). The "threatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) (internal citations omitted). The alleged threat cannot be "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 101-02. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Courts in this circuit have taken different approaches to standing analysis in cases involving alleged violations of California's unfair competition laws by purveyors of food and other consumer products. Some courts have held, on public policy grounds, that a plaintiff need not even allege that he intends to purchase the mislabeled product in the future in order to have standing for injunctive relief. *Henderson v. Gruma Corp.*, CV 10-04173 AHM AJWX, 2011 WL 1362188 at * 8 (C.D. Cal. Apr. 11, 2011). ("While Plaintiffs may not purchase the same Gruma products as they purchased during the class

period, because they are now aware of the true content of the products, to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws.").

Other courts have taken the position that a plaintiff must allege an intent to purchase the challenged product in the future in order to have standing for injunctive relief. *See Jou v. Kimberly-Clark Corp.*, 2013 U.S. Dist. LEXIS 173216, at *13 (N.D. Cal. Dec. 10, 2013) (rejecting "Plaintiffs' contention that it is unnecessary for them to maintain any interest in purchasing the products in the future" in order to establish Article III standing for injunctive relief); *see also Ries v Arizona Beverages USA LLC*, 287 F.R.D. 523, 533-34 (N.D. Cal. 2012) (finding that plaintiffs had standing to pursue injunctive relief where they alleged that they intended to purchase the products in the future).

Finally, some courts have held that the plaintiff's knowledge of the allegedly unlawful or misleading conduct precludes standing for injunctive relief under Article III. *Morgan v. Wallaby Yogurt Co.*, 13-CV-00296-WHO, 2014 WL 1017879 at * 6  (N.D. Cal. Mar. 13, 2014) ("Here, I am limited to only granting damages since the plaintiffs now know what evaporated cane juice is and have unambiguously stated that they would not have purchased the product had they known it contained added sugar. They cannot plausibly allege that they would purchase the challenged products in the future if they were properly labeled."); *Garrison v. Whole Foods Mkt. Grp., Inc.*, 13-CV-05222-VC, 2014 WL 2451290 at * 5 (N.D. Cal. June 2, 2014) ("The named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained SAPP, they would not have purchased them. Now they know. There is therefore no danger that they will be misled in the future."); *Ham v. Hain Celestial Grp., Inc.*, 14-CV-02044-WHO, 2014 WL 4965959 at * 6 (N.D. Cal. Oct. 3, 2014)(finding the plaintiff did not have standing for injunctive relief  "[b]ecause [plaintiff] is now aware that the products use SAPP, she cannot allege that she would be fraudulently induced to purchase the products in the future."); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014) ("These consumers will not benefit from the injunctive relief as they cannot demonstrate a probability of future injury; if they know the 'truth' they cannot be further deceived.").

Rahman has testified that he was misled by the "No Sugar Added" statement into thinking that Mott's 100% Apple Juice was lower in sugar and calories than comparable brands. He further testified

9

United States District Court
For the Northern District of California

1    that, but for having been misled, he would have purchased less of the product. However, whatever his

2    prior state of knowledge, Rahman is now fully aware that "No Sugar Added" simply means that no sugar

3    was added to a product, not that the product does not contain sugar or is a good beverage for a Type 2

4    diabetic to drink.  Rahman testified that despite being misled in the past, he wishes to purchase Mott's

5    Apple Juice again in the future if the challenged statement is removed from the label, even though the

6    apple juice would have as much natural sugar as ever.

7        Absent showing a likelihood of future harm, a plaintiff may not manufacture standing for

8    injunctive relief simply by expressing an intent to purchase the challenged product in the future. The

9    future harm required is defined by California's unfair competition laws.  Those laws require, among other

10   things, that the plaintiff prove that he relied on the unlawful or deceptive act, and that he suffered

11   damages as a result.  *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1138 (N.D. Cal. 2014) ("Plaintiffs

12   must allege that they relied on Defendant's alleged misrepresentations in order to demonstrate standing

13   under the FAL, CLRA, and the UCL."). Merely being exposed to an allegedly unlawful label is not a

14   cognizable harm. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641(2009) ("Thus, the statute provides

15   that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but

16   some kind of damage must result."). Similarly, merely feeling that one cannot trust defendant's future

17   representations is not sufficient harm to confer standing for injunctive relief. *Profant v. Have Trunk Will

18   Travel*, CV 11-05339-RGK OPX, 2011 WL 6034370 at * 5 (C.D. Cal. Nov. 29, 2011) ("Plaintiffs allege

19   that they will face future harm by not being able to trust Defendants . . .. This future harm is conjectural

20   and too speculative to satisfy the standing requirements to seek injunctive and declaratory relief in federal

21   court."). To have standing for injunctive relief, a plaintiff must show he "suffered or is threatened with

22   a concrete and particularized legal harm [and] a sufficient likelihood that he will again be wronged in a

23   similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal citations

24   omitted). Rahman cannot plausibly prove that he will, in the future, rely on the "No Sugar Added"

25   statement to his detriment. He therefore lacks Article III standing for injunctive relief.  "[T]he power of

26   federal courts is limited, and that power does not expand to accommodate the policy objectives

27

28

1    underlying state law." *Garrison v. Whole Foods Mkt. Grp., Inc.*, 13-CV-05222-VC, 2014 WL 2451290

2    at * 5 (N.D. Cal. June 2, 2014).[4]

3

4    **III.    Reliance**

5           Mott's argues that it is entitled to summary judgment because actual reliance is an element of all

6    of Rahman's claims, and that he has failed to introduce evidence showing that he relied on, or was misled

7    by, the statement "No Sugar Added." Docket No. 68 at 18-20.

8           The California Supreme Court has held that the UCL "imposes an actual reliance requirement on

9    plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II*

10   *Cases*, 46 Cal. 4th 298, 326 (2009). The California Supreme Court subsequently held that the actual

11   reliance requirement also applies to claims under the unlawful prong of the UCL where – as is the case

12   here – the alleged unlawful conduct is that the defendant engaged in misrepresentations and consumer

13   deception. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 n.9 (2011) (citing *Durell*, 183 Cal.

14   App. 4th at 1363 ("[T]he reasoning of *Tobacco II* [concerning the actual reliance requirement] applies

15   equally to the 'unlawful' prong of the UCL when, as here, the predicate unlawfulness is

16   misrepresentation and deception."); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010)

17   ("[W]e conclude the reasoning of *Tobacco II* applies equally to the 'unlawful' prong of the UCL, when,

18   as here, the predicate unlawful conduct is misrepresentation."). The reliance requirement is also applied

19   to the UCL's unfair prong, when – as is the case here – the underlying conduct is alleged to misrepresent

20   or deceive. *In re Actimmune Mktg. Litigation*, C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1,

21   2010) *aff'd,* 464 F. App'x 651 (9th Cir. 2011). Courts have also held that plaintiffs must prove reliance

22   under the FAL and CLRA. *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1138 (N.D. Cal. 2014)

23   ("Plaintiffs must allege that they relied on Defendant's alleged misrepresentations in order to demonstrate

24

25   _____

26        [4]In ruling on defendant's motion to dismiss Rahman's First Amended Complaint,  this Court
     held, at the motion to dismiss stage, that pleading an intent to purchase the challenged product in the
27   future was *necessary* to confer standing for injunctive relief. Docket No. 46. However, upon reviewing
     all the evidence presented on this motion for summary judgment, the Court finds that introducing
28   evidence which merely shows an intent to purchase the product in the future, where the product itself
     remains the same, is not *sufficient* to confer standing for injunctive relief.

1    standing under the FAL, CLRA, and the UCL."). Justifiable reliance is also an element of

2    misrepresentation. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201, n. 2 (9th Cir. 2001).

3        In *Tobacco II* 46 Cal. 4th at 326, the California Supreme Court held that in order to prove

4    reliance, a plaintiff must show that the alleged misrepresentation played a "substantial part" in

5    influencing his conduct ("It is not . . . necessary that [the plaintiff's] reliance upon the truth of the

6    fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his

7    conduct . . .  It is enough that the representation has played a substantial part, and so had been a

8    substantial factor, in influencing his decision.").

9        Rahman concedes in his deposition testimony that taste and price are the two most important

10   factors he relies on when purchasing food and beverage products. Docket No. 68-3 at 71. He also admits

11   that he continued to purchase Mott's even when the "No Sugar Added" statement was not present on the

12   label. *Id.* at 159-60 (**"Q:** In 1991, you were making a buying decision for Mott's without considering on

13   the front of the label any reference to or words "No Sugar Added"? **A:** Correct."). Rahman further notes

14   that he typically looks to a beverage's nutrition facts to inform himself of its sugar and calorie content,

15   *id.* at 136-37, and that he did not rely on the "No Sugar Added" label to tell how many calories or sugar

16   were in the beverage, or how healthy it was.  *Id.* at 194 (**"Q:** You can't rely on the "No sugar added" to

17   tell you how many calories are in the apple juice; right? **A:** Correct.").

18       However, Rahman also gave testimony tending to show he did in fact rely on the "No Sugar

19   Added" statement. For example, he testified that it caused him to believe there were fewer calories than

20   comparable apple juice products. *Id.* at 184. He testified that it caused him to believe that Mott's 100%

21   Apple Juice had less sugar than similar products. *Id.* at 189 (**"A:** Well, I'm assuming– I'm assuming it

22   does have less sugar because of the label."). Rahman also noted that the "No Sugar Added" statement

23   caused him to believe the product was healthier than other juices. *Id.* at 206-07. Finally, Rahman states

24   that the label caused him to purchase more of the product than he would have in the absence of the "No

25   Sugar Added" statement. *Id.* at 225 (**"A:** I purchased more because when I saw the label that said 'No

26   sugar added,' I thought it would be a less sugar content than the other apple juice products.").

27       There is thus conflicting evidence on the issue of whether Rahman relied on the "No Sugar

28   Added" statement when making his purchasing decisions. On a motion for summary judgment, "all

1   reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light

2   most favorable to" the nonmoving party. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir.

3   2003) (internal quotations omitted).The Court therefore finds that there is a triable issue of fact, and that

4   summary judgment is not warranted on the question of reliance.

5

6   **IV.    The Reasonable Consumer Standard**

7           Mott's contends that Rahman has failed to introduce evidence showing that a reasonable

8   consumer would be misled by the "No Sugar Added" statement on the label of Mott's 100% Apple Juice.

9   Docket No. 68 at 16-17.

10          California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent

11  business practice.  Cal. Bus. & Prof. Code §§ 17200-17210.  "Each prong of the UCL is a separate and

12  distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The UCL's

13  fraud prong prohibits any "fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

14  California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  *Id.* § 17500.

15  California's Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and

16  unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.

17          False advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the

18  UCL are governed by the reasonable consumer standard. *Williams v. Gerber Products Co.*, 552 F.3d 934,

19  938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003); *Kasky v. Nike,*

20  *Inc.*, 27 Cal. 4th 939, 951 (2002). The reasonable consumer standard also applies to claims for negligent

21  misrepresentation. *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 562 (9th Cir. 2008)

22  ("Girard's negligent misrepresentation claim likewise hinges on the reasonable consumer standard since

23  justifiable reliance cannot be established if reasonable consumers would not rely on the purported

24  misrepresentation."). Under the reasonable consumer standard, a plaintiff must show that members of

25  the public are likely to be deceived.  *Williams*, 552 F.3d at 938 ("The California Supreme Court has

26  recognized that these laws prohibit not only advertising which is false, but also advertising which[,]

27  although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or

28  confuse the public.") (internal quotation marks omitted). A likelihood of deception means that "it is

1    probable that a significant portion of the general consuming public or of targeted consumers, acting

2    reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th

3    at 508.

4         Courts have taken divergent approaches in describing the burden a plaintiff must meet at the

5    summary judgment stage in order to show a likelihood that a reasonable consumer would be deceived.[5]

6    Some have said that the "plaintiff must demonstrate by extrinsic evidence, such as consumer survey

7    evidence, that the challenged statements tend to mislead consumers." *Haskell v. Time, Inc.*, 965 F. Supp.

8    1398, 1407 (E.D. Cal. 1997); *see also William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir.

9    1995) (plaintiff failed to meet its burden of showing, under the Lanham Act, that "a significant portion"

10   of letter recipients were misled by defendant, where plaintiff's evidence consisted of testimony of two

11   of 300 letter recipients, an employee who had received phone calls from confused recipients, and the

12   company president); *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*,

13   960 F.2d 294, 297 (2d Cir. 1992) ("Where, as here, a plaintiff's theory of recovery is premised upon a

14   claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged

15   commercials tend to mislead or confuse consumers . . . . It is not for the judge to determine, based solely

16   upon his or her own intuitive reaction, whether the advertisement is deceptive.").

17        Other courts have taken a less data-driven approach, requiring only that "reasonable minds could

18   differ" in order to find a triable issue of fact as to whether a reasonable consumer would be deceived.

19   *Miletak v. Allstate Ins. Co.*, C 06-03778 JW, 2010 WL 809579 (N.D. Cal. Mar. 5, 2010); *see also Park

20   v. Cytodyne Technologies, Inc.*, GIC 768364, 2003 WL 21283814 (Cal. Super. Ct. May 30, 2003) ("[T]o

21   establish that advertising is misleading under a reasonable consumer test should not require the use of

22   consumer surveys. Considering that the advertisement speaks for itself, the judge is in a position to

23   determine whether it is misleading, i.e. likely to deceive, under a 'reasonable consumer' standard.");

24   *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003).

25

26

27        [5]As one court noted, "case law is less than clear as to what a private plaintiff needs to prove to

28   successfully litigate a cause of action alleging misleading or deceptive practices" under the UCL and
     CLRA. *Johns v. Bayer Corp.*, 09CV1935 AJB DHB, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013).

United States District Court
For the Northern District of California

1    This Court need not resolve the debate in order to rule on this motion. While Rahman contends

2    that he was misled by the "No Sugar Added" statement, Docket 68-3 at 207-08, he also readily conceded

3    on numerous occasions throughout his testimony that he would have no way of knowing whether other

4    consumers were similarly deceived, or more generally, what information they relied on when purchasing

5    Mott's 100% Apple Juice. *Id.* at 205 (**"Q:** And what other consumers thought when they saw 'No sugar

6    added' on there, if they even saw it, is up to them; right? **A:** Correct. **Q:** We'd have to ask them? **A:**

7    Correct."); *Id.* at 38, 52-53, 61, 72, 78, 121, 154, 169, 177, 180, 222, 228-29. The Court agrees with

8    Rahman that, standing alone, evidence of his experience with the Mott's 100% Apple Juice product is

9    not sufficient to draw a conclusion as to whether a reasonable consumer would have been similarly

10   misled. This is especially true here, because the allegedly deceptive nature of the statement is not self-

11   evident (presumably both parties would agree that "No Sugar Added" is literally true, in that it accurately

12   reflects the ingredients used to make Mott's 100% Apple Juice). Therefore the Court finds that Rahman

13   must introduce some additional evidence in order to raise a triable issue of fact as to whether a reasonable

14   consumer would be misled by the labeling on Mott's 100% Apple Juice. The testimony of a single

15   consumer in a putative class of potentially millions is not enough to meet this burden.

16   Both parties have produced evidence on this issue. Mott's has provided the expert testimony of

17   Dr. Kent Van Liere, who conducted a consumer survey of a few hundred people to ascertain whether

18   consumers relied on the "No Sugar Added" label when choosing to purchase Mott's 100% Apple Juice.

19   Docket No. 68-6, Van Liere Dep. Dr. Van Liere concluded that "the presence of the 'no sugar added'

20   label does not cause consumers to mention a low level of sugar as a reason for purchasing Mott's over

21   other brands." *Id.* at 43. Dr. Van Liere used a test group that was presented with the Mott's 100% Apple

22   Juice label, and a control group that was presented with the same label except that it did not contain the

23   "No Sugar Added" statement. He found no significant difference in responses between the number of

24   respondents in each group who said they chose to purchase Mott's because it was lower in sugar than

25   other brands. *Id.* at 79.

26   Plaintiff has produced the expert report of Professor Michael Belch, PhD. Docket No. 77-1, Exh.

27   E. Prof. Belch concludes, based on his "analysis of the materials provided" and his "experience in

28   advertising and consumer behavior" that the "No Sugar Added" message has a "high likelihood" of

United States District Court
For the Northern District of California

1    misleading consumers into thinking that Mott's 100% Apple Juice is healthier, lower in sugar, and lower

2    in calories than other brands. *Id.* ¶ 9. Prof. Belch's report also criticizes perceived shortcomings in Dr.

3    Van Liere's survey, *Id.* ¶¶ 16-20, and provides the general contours of a proposed alternative

4    methodology for conducting a consumer survey on the issue. *Id.* ¶¶ 14-15.

5         However, Prof. Belch did not conduct a survey of his own, he only stated that he *could* perform

6    such a survey. *Id.* A general description of the methodology of a proposed study, standing alone, is not

7    evidence of whether a reasonable consumer is likely to be deceived by the "No Sugar Added" statement.

8    Similarly, criticizing the methodology of a survey that tends to show a reasonable consumer would not

9    be deceived, is no substitute for introducing evidence which arrives at the opposite conclusion. Indeed,

10   Prof. Belch concedes that "the appropriate methodology for reaching valid and reliable answers to these

11   questions is to conduct a survey," *id.* at ¶ 15, yet he has apparently failed to follow his own advice. Apart

12   from plaintiff's own testimony, the only evidence advanced by plaintiff tending to show that a reasonable

13   consumer would be deceived is an assertion by Prof. Belch, unsupported by any independent facts or

14   data. "[C]onclusory, speculative testimony . . . is insufficient to raise genuine issues of fact and defeat

15   summary judgment." *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

16   "Further, a motion for summary judgment may not be defeated by evidence that is 'merely colorable' or

17   'not significantly probative.'" *Ogden v. Bumble Bee Foods, LLC*, 5:12-CV-01828-LHK, 2014 WL 27527

18   at * 6 (N.D. Cal. Jan. 2, 2014), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The

19   moving party may prevail on summary judgement by showing that "the nonmoving party does not have

20   enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion

21   at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

22   Here, plaintiff has failed to submit sufficient evidence to raise a genuine issue of fact as to whether a

23   reasonable consumer would be deceived by the "No Sugar Added" statement. Therefore, the Court grants

24   defendant's motion for summary judgement as to plaintiff's claims under the CLRA, FAL, the unfair and

25   fraud prongs of the UCL, and negligent misrepresentation.

26

27                                        **CONCLUSION**

28        For the foregoing reasons, the Court GRANTS in part and DENIES in part defendant's motion

                                              16

for summary judgment.  Docket No. 68. The Court GRANTS defendant's motion for summary judgment as to Rahman's claims under the CLRA, FAL, the fraud and unfair prongs of the UCL, and for negligent misrepresentation. The Court GRANTS defendant's motion for summary judgment on whether Rahman has Article III standing for injunctive relief. The Court DENIES defendant's motion for summary judgment as to Rahman's claims under the unlawful prong of the UCL and for breach of quasi-contract. This order resolves Docket Nos. 68 and 78.

**IT IS SO ORDERED.**

Dated: October 14, 2014

SUSAN ILLSTON
United States District Judge