UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED RAHMAN, | Case No. 13-cv-03482-SI |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR CLASS CERTIFICATION AND DENYING MOTION FOR RECONSIDERATION** |
| MOTT'S LLP, | |
| Defendant. | Re: Dkt. Nos. 75, 84 |

Now before the Court is plaintiff Rahman's motion for class certification and defendant Motts' motion for leave to file a motion for reconsideration, both scheduled for hearing on December 5, 2014.  Docket Nos. 75, 84.  Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing.  For the reasons stated below, the Court **DENIES** plaintiff's motion to certify the class, and **DENIES** defendant's motion to reconsider.

## I.  Procedural Background

This is a consumer class action.  Defendant Mott's is the manufacturer of various food products containing the statement "No Sugar Added" on their labels and/or packaging.  Docket No. 48, Second Amended Complaint ("SAC") ¶¶ 1-2, 6.  Plaintiff Mohammed Rahman alleges that the use of the statement "No Sugar Added" on Mott's 100% Apple Juice does not comply with applicable Food and Drug Administration ("FDA") regulations, specifically 21 C.F.R. § 101.60(c)(2).  *Id.* ¶¶ 2, 8-12.

Plaintiff further alleges that defendant's failure to comply with the FDA regulations violates California's Sherman Law ("Sherman Law"), California Health and Safety Code

United States District Court
Northern District of California

§ 109875 et seq. *Id.* ¶¶ 2, 13-16.  Plaintiff alleges that he purchased Mott's Original 100% Apple Juice after reading and relying on the product's "No Sugar Added" labeling and after observing that a competitor's 100% apple juice did not contain a "No Sugar Added" claim.  *Id.* ¶ 31. Plaintiff alleges that he would not have purchased as much of the product as he did if it did not contain the "No Sugar Added" label. *Id.* ¶ 59.

On June 13, 2013, plaintiff filed a class action complaint in San Francisco County Superior Court against defendants Mott's and Dr. Pepper Snapple Group, Inc. ("Dr. Pepper").  Docket No. 1-1, Compl. ¶¶ 67-76.  On July 26, 2013, defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b), based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Docket No. 1, Notice of Removal.  On August 30, 2013, plaintiff voluntarily dismissed Dr. Pepper.  Docket No. 21.  On August 30, 2013, defendant Mott's filed a motion to dismiss, Docket No. 22, and on September 30, 2013, plaintiff filed a first amended complaint ("FAC"), mooting the motion to dismiss.  Docket No. 29.  Defendant Mott's then moved to dismiss the FAC, Docket No. 31, and on January 29, 2014, the Court granted the motion in part, with leave to amend. Docket No. 46.

On February 24, 2014, plaintiff filed a second amended class action complaint ("SAC"), alleging causes of action for: (1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code § 17500 et seq; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq; (4) negligent misrepresentation; and (5) breach of quasi-contract.  Docket No. 48, SAC.  Mott's moved to dismiss the SAC, Docket. No. 49, and on April 8, 2014, the Court denied the motion. Docket No. 54. On August 12, 2014, Mott's moved for summary judgment. Docket No. 68. On October 15, 2014, the Court largely held in Mott's favor, denying summary judgment only as to plaintiff's cause of action under the UCL's unlawful prong and for breach of quasi-contract.

Now before the Court is plaintiff's motion for class certification, and defendant's motion to reconsider the issue of restitution damages in the Court's summary judgment order. Docket Nos. 75, 84.

United States District Court
Northern District of California

2

## II.     Plaintiff's Mislabeling Allegations

All of Rahman's claims are premised on his contention that, by including "No Sugar Added" on the product label, Mott's 100% Apple Juice is mislabeled under California's Sherman Law and FDA regulations.  FAC ¶¶ 55, 63-64, 76-78, 85, 90.  California's Sherman Law broadly prohibits the misbranding of food.  *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008) (citing Cal. Health & Safety Code § 110765).  The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 ("FDCA") as the food labeling regulations of California.  *Id.* at 1087; Cal. Health & Safety Code § 110100(a); *see also* Cal. Health & Safety Code §§ 110665, 110670.  The relevant FDCA labeling regulation, 21 C.F.R. § 101.60(c)(2), provides:

> The terms "no added sugar," "without added sugar," or "no sugar added" may be used only if:
>
> (i) No amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and
>
> (ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and
>
> (iv) The food that it resembles and for which it substitutes normally contains added sugars; and
>
> (v) The product bears a statement that the food is not "low calorie" or "calorie reduced" (unless the food meets the requirements for a "low" or "reduced calorie" food) and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content.

Plaintiff alleges that Mott's fails to comply with section 101.60(c)(2)(v) because Mott's 100% Apple Juice does not state on its labels that it is not "low calorie" or "calorie reduced," as defined by 21 C.F.R. §§ 101.60(b)(2)(i)(A) and 101.60(b)(4)(i). SAC ¶ 12. Plaintiff further alleges that Mott's fails to comply with section 101.60(c)(2)(iv) because Mott's 100% Apple Juice does not resemble or substitute for any foods that typically contain added sugars. *Id.* ¶ 11.

Rahman alleges that because the labels of competing apple juices did not contain a "No

United States District Court
Northern District of California

Sugar Added" statement, he concluded that this differentiated Mott's 100% Apple Juice from the competition as a less sugared, healthier product. *Id.* ¶¶ 31, 33, 35. Rahman alleges that if Mott's 100% Apple Juice had been labeled in accordance with FDA regulations, he would not have been misled as to its sugar content, and as a result would have purchased smaller quantities of it. *Id.* ¶ 59.

## LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014), *citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The plaintiff "must actually *prove* – not simply plead – that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, --- S.Ct. ---, 2014 WL 2807181 (June 23, 2014), *citing Comcast Corp v. Behrend*, 133 S.Ct. 1426, 1431-32 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011).

The Court's "class certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1194 (2013), *quoting Dukes*, 131 S.Ct. at 2551 (internal quotation marks omitted). These analytical principles govern both Rule 23(a) and 23(b). *Comcast*, 133 S.Ct. at 1342. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S.Ct. at 1194-95. "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.*

Under Rule 23(a), the class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). "While it is not an enumerated requirement of Rule 23[(a)],

courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *Vietnam Veterans of Am. v. C.I.A.,* 288 F.R.D. 192, 211 (N.D. Cal. 2012), *quoting DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970); *see also Marcus v. BMW of North America, LLC,* 687 F.3d 583, 592–93 (3d Cir.2012); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *4 (N.D. Cal. May 23, 2014). A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. See Fed. R. Civ. P. 23(b).

## DISCUSSION

Plaintiff proposes to certify a class defined as: "All California residents who, from June 13, 2009, until the date of the preliminary approval order, purchased Mott's 100% Apple Juice bearing the statement "No Sugar Added" on the label or package (the "Class")." Docket No. 75, Pl. Mot. at 9.

### I.      Rule 23(a)

### A.      Numerosity

In order to certify, the class must be so numerous that joinder of all members individually is "impracticable." *See* Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility" but rather speaks to "the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer." *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). Here it is uncontroverted that Mott's sold millions of units of the challenged product during the class period. Defendant does not argue that the numerosity requirement has not been met. Accordingly, the Court finds that the numerosity

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    requirement is satisfied. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 nt.

2    5 (9th Cir. 1977) ("In ruling on a class action a judge may consider reasonable inferences drawn

3    from facts before him at that stage of the proceedings and an appellate court will generally defer to

4    the district court's determination that the class is sufficiently numerous as to make joinder

5    impractical.").

6

7         **B.    Ascertainability**

8         "A class is ascertainable if the class is defined with 'objective criteria' and if it is

9    'administratively feasible to determine whether a particular individual is a member of the class.'"

10   *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *9 (N.D.

11   Cal. May 23, 2014), *citing Wolph v. Acer America Corp.,* No. 09–1314, 2012 WL 993531, at *1–2

12   (N.D.Cal. Mar. 23, 2012). Mott's objects to finding the class ascertainable on two grounds.

13        First, Mott's argues that the proposed class is not ascertainable because Mott's does not

14   keep records to identify individuals who have purchased 100% Apple Juice, and because

15   consumers are unlikely to have kept purchase receipts. Docket No. 74, Def. Opp'n at 13.

16   Defendant relies in part on *Carrera v. Bayer Corp.*, 727 F. 3d 300 (3d Cir. 2013), a case in which

17   the Third Circuit found a proposed class to be unascertainable because the use of affidavits to

18   identify class membership would deprive the defendant of due process rights, and because it

19   would be impracticable to assure the accuracy of the claims. *Id.* 309-10. "While this may now be

20   the law in the Third Circuit, it is not currently the law in the Ninth Circuit… In this Circuit, it is

21   enough that the class definition describes a set of common characteristics sufficient to allow a

22   prospective plaintiff to identify himself or herself as having a right to recover based on the

23   description." *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at

24   *8 (C.D. Cal. Jan. 13, 2014); *see also Werdebaugh*, No. 12-CV-2724-LHK, 2014 WL 2191901, at

25   *11; *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013), *citing Ries v. Arizona Beverages

26   USA LLC*, 287 F.R.D. 523, 536 (N.D.Cal.2012) ("If class actions could be defeated because

27   membership was difficult to ascertain at the class certification stage, there would be no such thing

28   as a consumer class action."). In light of the precedent set by many other district courts in this

Circuit, the Court declines to follow *Carrera.  See Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014) ("Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits.").

Mott's second argument is more persuasive. Mott's notes that because the "No Sugar Added" label did not appear on Mott's 100% Apple Juice between roughly late 2010 to early 2012, plaintiff will not be able to distinguish consumers who purchased the product with the label from those who purchased it without the label. Def. Opp'n at 14. Mott's further notes that it has no way of accurately assessing when the product with the challenged label actually appeared in retail stores given that it would depend on each individual retailer's inventory of Mott's 100% Apple Juice and when they decided to place new orders. Docket No. 87; *see also* Docket No. 87-1, Blackwood Dep. Defendant relies on *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097, (N.D. Cal. Jan. 7, 2014). In *Astiana*, plaintiffs claimed that the "all natural" statement on the ice cream label was misleading because the product contained a synthetic ingredient. However, only one out of as many as fifteen suppliers used the synthetic ingredient, and the label did not denote whether the ingredient was present. Because it was impossible to identify which consumers had consumed the ice cream containing the synthetic ingredient, the Court found the class to be unascertainable. *Id.* at *3.

The Court agrees that defining the class period to include long stretches of time when the challenged statement did not appear on the label would raise ascertainability concerns. However, unlike *Astiana*, these issues can be cured by redefining the class to exclude any individuals who purchased Mott's between dates when "No Sugar Added" certainly did not appear on the label, and by defining the class as only those persons who bought the juice with the challenged statement.[1] In *Astiana*, putative class members would have no way of knowing whether they

---

[1] Rahman's current proposed class definition already addresses this concern by limiting the class to persons who "purchased Mott's 100% Apple Juice bearing the statement 'No Sugar Added' on the label or package."

United States District Court
Northern District of California

purchased ice cream with the synthetic ingredient, since it did not appear on the label. Here, putative class members could know whether or not the challenged statement appeared on the label when they purchased apple juice. Accordingly, the Court finds that the ascertainability concerns raised by Mott's do not require denying certification.

### C.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), *quoting Falcon*, 457 U.S. at 157 (internal quotation mark omitted).  Plaintiffs' claims "must depend on a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each other of the claims in one stroke." *Id.*

Here, plaintiff has demonstrated that there are significant questions common to the proposed class, including whether the challenged statement violates relevant FDA regulations as incorporated in the Sherman Law, and whether the challenged statement constitutes an "unlawful practice" under the UCL. These questions are likely to "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original) (internal citations omitted).

### D.    Typicality

Rule 23(a)(3) requires the named plaintiffs to show that their claims are typical of those of the class.  To satisfy this requirement, the named plaintiffs must be members of the class and must "possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (quotation marks and citation omitted).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th

United States District Court
Northern District of California

1    Cir. 2010) (citation omitted).  Rule 23(a)(3) is "permissive" and only requires that the named

2    plaintiffs' claims be "reasonably co-extensive with those of absent class members."   *Hanlon v.*

3    *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

4            Mott's makes three arguments for why plaintiff is not typical of the class. The first two

5    arguments are (1) that reliance is an element of all of plaintiff's claims, and that plaintiff did not

6    actually rely on the challenged label, and (2) that in his deposition testimony plaintiff disclaimed

7    any desire to obtain damages. Def. Opp'n 15-17. Both of these issues were addressed in the

8    Court's summary judgment order, wherein the Court found that there is a triable issue of fact as to

9    whether plaintiff relied on the challenged statement, and that plaintiff did not affirmatively waive

10   his claim to damages through his deposition testimony. Moreover, these arguments are directed

11   more at the merits of the underlying case than Rahman's typicality. "Merits questions may be

12   considered to the extent—but only to the extent—that they are relevant to determining whether the

13   Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans &*

14   *Trust Funds*, 133 S. Ct. 1184, 1195 (2013). Neither of these two theories is sufficient to render

15   Rahman atypical.

16           Finally, Mott's argues that Rahman is atypical of the class because he is a Type 2 diabetic

17   and closely reads nutrition labels. Def Opp'n 17-18. Setting aside the unfortunate reality that a

18   large and increasing proportion of Americans are afflicted with diabetes, hypertension, cancer, or

19   other diseases that would cause them to closely monitor their sugar consumption, Rule 23(a)(3) is

20   not concerned with every possible idiosyncrasy which may distinguish a class representative from

21   the class. Rather, "Rule 23(a)(3) focuses on the defendants' conduct and plaintiff's legal theory."

22   *Sisley v. Sprint Commc'ns Co., L.P.*, 284 F. App'x 463, 468 (9th Cir. 2008)(internal quotations

23   omitted). "Moreover, individual experience with a product is irrelevant because the injury under

24   the UCL… is established by an objective test. Specifically, this objective test states that injury is

25   shown where the consumer has purchased a product that is marketed with a material

26   misrepresentation…That Plaintiffs may have considered other factors in their purchasing decisions

27   does not make them atypical." *Werdebaugh*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *16

28   (internal citations omitted).

United States District Court
Northern District of California

Plaintiff's claims are therefore typical of the class. Like all the members of the class, plaintiff's legal claims arise out of the harm resulting from the purchase of Mott's 100% Apple Juice with an allegedly unlawful statement on the label. Furthermore, Mott's has identified no "unique defenses" that would render Rahman atypical by "threaten[ing] to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

### E.      Adequacy

Rule 23(a)(4) permits the certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

Mott's arguments for why Rahman and his counsel are inadequate largely track its arguments for why Rahman is atypical. While this is not surprising given that "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)," *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626, nt. 20 (1997) (internal citations omitted), the Court finds Mott's arguments no more availing than it did under its typicality analysis.

Rahman does not seek to prosecute any claims that are unique to him and there appears to be no conflict of interest between Rahman, his counsel, or the class. There is also no basis for determining that class counsel will not prosecute the action vigorously.

Mott's urges the Court to find Rahman's counsel inadequate under *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013). In *Ries*, the plaintiffs' counsel failed to appoint a damages expert by the deadline set by the Court, asked for an extension to reopen expert discovery five months after the deadline had passed, and later withdrew their deposition notice for defendants' expert. The Court found plaintiffs' counsel to be inadequate because they "[had] been dilatory and [had] failed to prosecute [the] action adequately." *Id.* at * 9. Here, plaintiff's counsel has not caused the type of undue delay that would warrant a finding of

United States District Court
Northern District of California

1  inadequacy. While Rahman has failed to articulate a methodology for calculating damages on a

2  class-wide basis, this appears to be a tactical choice rather than a symptom of inadequacy[2].

3  Accordingly, the Court finds that the adequacy requirement is satisfied.

4

5  ## II.   Rule 23(b)(3)

6  Along with the requirements of Rule 23(a), a plaintiff must also establish that one or more

7  of the grounds for maintaining the suit are met under Rule 23(b).  Here, plaintiffs seek certification

8  under Rule 23(b)(3)[3], which provides that a case may be certified as a class action if "the questions

9  of law or fact common to class members predominate over any questions affecting only individual

10 members, and that a class action is superior to other available methods for fairly and efficiently

11 adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

12 The predominance requirement of Rule 23(b) "is far more demanding" than the

13 commonality requirement of Rule 23(a).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24

14 (1997).  This inquiry "tests whether proposed classes are sufficiently cohesive to warrant

15 adjudication by representation."  *Id.* at 623. *See also Wang v. Chinese Daily News, Inc.*, 737 F.3d

16 538, 545 (9th Cir. 2013), *quoting Hanlon*, 150 F.3d at 1022 (internal quotation mark omitted) (The

17 predominance analysis "focuses on the relationship between the common and individual issues in

18 the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by

19 representation.").   The Rule requires "that common questions '*predominate* over any questions

20 affecting only individual [class] members.'"  *Amgen*, 133 S.Ct. at 1196 (quoting Fed. R. Civ. P.

21 23(b)(3)) (emphasis in original).

22 As noted above, plaintiff has shown commonality as to issues arising under the unlawful

23 prong of the UCL. Plaintiff further argues that these issues will predominate over issues unique to

24 individual class members. Plaintiff has made a prima facie showing that the "No Sugar Added"

25

26 [2] As discussed below, Rahman seeks to certify a liability-only class under Rule 23(c)(4), which would potentially obviate the need for a damages expert.

27 [3] To the extent Rahman continues to move for certification pursuant to Rule 23(b)(2), his motion is denied as moot. In its summary judgment order, the Court held that Rahman did not have Article III standing for injunctive relief. Docket No. 83 at 7-11.

28

statement constitutes a violation of California's Sherman Law, and is thus independently actionable under the unlawful prong of the UCL. Such a showing gives rise to a presumption of materiality. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *citing Kwikset Corp. v. Superior Court*, 120 Cal.Rptr.3d 741, 246 P.3d at 892–93. ("[T]he legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination."). Furthermore, "[a] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). Mott's argument that reliance is not subject to common proof because "Rahman has no evidence that consumers would rely on 'No Sugar Added' in the same idiosyncratic way that Rahman did," Def. Opp'n at 21, is inapposite in light of this objective standard. See *Lilly*, No. 13-CV-02998-JST, 2014 WL 4652283, at *8 ("proving the 'unfair' and 'unlawful' prongs of the UCL also do not depend upon any issues specific to individual consumers."); *see also Mass. Mutual Life Ins. Co. v. Superior Court,* 97 Cal.App.4th 1282, 1292, 119 Cal.Rptr.2d 190 (2002) (internal citations omitted) (holding that under the CLRA, "if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class."). Therefore, the Court finds that Rahman has satisfied the predominance requirement as to issues of liability.

Mott's also argues that Rahman has failed to "satisfy the predominance requirement because he has not presented a damages model that is attributable to Mott's alleged misconduct, or demonstrated how damages can be shown on a class-wide basis using collective evidence." Def Opp'n at 20. To satisfy the predominance requirement, Rahman must show (1) that "damages are capable of measurement on a classwide basis," *Comcast*, 133 S. Ct. at1433, and (2) that there is a nexus between his theory of liability and his method of proving damages. *Id.* ("If respondents prevail on their claims, they would be entitled only to damages resulting from reduced overbuilder competition, since that is the only theory of antitrust impact accepted for class-action treatment by the District Court. It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even

United States District Court
Northern District of California

attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).").

So long as plaintiff has satisfied these two prongs, in the Ninth Circuit, predominance will not be defeated merely because individualized damages calculations may ultimately be necessary in the event plaintiffs prevails. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) ("In this circuit, however, damage calculations alone cannot defeat certification.")(internal citations omitted); *Munoz v. PHH Corp.,* No. CV 08–00759 AWI, 2013 WL 2146925, at *24 (E.D.Cal. May 15, 2013) ("The *Comcast* decision does not infringe on the long-standing principle that individual class member damage calculations are permissible in a certified class under Rule 23(b)(3)"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) ("Plaintiffs represent that they can calculate the total restitutionary damages…If individual issues as to how much reward each class member is entitled [to] later predominate, the Court can address such concerns at that time.").

Under plaintiff's UCL and quasi-contract claims, the proper measure of damages is restitution. *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *3 (N.D. Cal. Apr. 27, 2012) (holding that restitution is a proper measure of damages for breach of quasi-contract); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 539 (C.D. Cal. 2013) ("Plaintiffs under the UCL can recover only restitution and injunctive relief."). This will likely involve demonstrating what portion of the sale price was attributable to the value consumers placed on the "No Sugar Added" statement. Plaintiff has failed to show predominance as to damages because he has introduced no evidence showing that restitution "damages [can] feasibly and efficiently be calculated once the common liability questions are adjudicated." *Leyva*, 716 F.3d at 514. Accordingly, the Court finds that the class may not be certified for purposes of seeking damages. *See Lilly*, No. 13-CV-02998-JST, 2014 WL 4652283, at *10 (holding that where damage calculations are likely to be complex, "expert reports or at least some evidentiary foundation may have to be laid to establish the feasibility and fairness of damage assessments."); *Werdebaugh*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *22 (holding that plaintiff "must present a damages methodology that can determine the price premium attributable to Blue

Diamond's use of the [challenged] labeling statements."); *In re POM Wonderful LLC*, No. ML 10-02199 DDP RZX, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014) ("Plaintiffs must demonstrate, therefore, that Defendant's alleged misrepresentations caused Plaintiffs to pay a 'price premium' of $290 million more than Plaintiffs otherwise would have paid for Defendant's products in the absence of the misrepresentations."); *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013) ( summarizing the holding of *Comcast* as "[n]o damages model, no predominance, no class certification.").

### III.   Rule 23(c)(4)

Acknowledging his failure to provide evidence sufficient to demonstrate predominance as to damages, Rahman asks the Court to certify a liability-only class under Rule 23(c)(4), which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). In the wake of *Comcast*, a number of other circuits have held that a liability-only class may be certified even in the absence of a showing of predominance on the issue of damages, while the Ninth Circuit appears to have implicitly endorsed this approach.  *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014), *citing In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013) ("[T]he rule of *Comcast* is largely irrelevant [w]here determinations on liability and damages have been bifurcated in accordance with Rule 23(c)(4) and the district court has reserved all issues concerning damages for individual determination. Even after *Comcast,* the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members."); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) (holding that *Butler*, *Whirlpool*, and *Deepwater Horizon* "are compelling. And their reasoning is consistent with

United States District Court
Northern District of California

our circuit precedent.").

However, a district court is not bound to certify a liability class merely because it is permissible to do so under Rule 23(b)(3). The language of Rule 23(c)(4) speaks of certifying as to particular issues "when appropriate," meaning that "[c]ourts should use Rule 23(c)(4) only where resolution of the particular common issues would materially advance the disposition of the litigation as a whole." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013) (internal citations omitted). Rahman has failed to articulate why a bifurcated proceeding would be more efficient or desirable. In his briefs, he has been vague as to whether he intends to later certify a damages class, allow class members to individually pursue damages, or has some other undisclosed plan for resolving this case.[4] In any event, none of these options is particularly desirable. Should Rahman prevail on the issue of liability, certifying a second class on the issue of damages would in essence amount to prosecuting two trials when one would have done just as well. Alternatively, allowing myriad individual damages claims to go forward hardly seems like a reasonable or efficient alternative, particularly in a case such as this where the average class member is likely to have suffered less than a hundred dollars in damages.

In *Lilly*, the Court certified a liability class under Rule 23(c)(4) where the plaintiff had presented no evidence on how damages could be calculated on class-wide basis, reasoning that "[s]ome of the difficulties in determining individual damages may fall away after liability is determined, depending upon which claims (if any) are successful, and which type [of] relief the class is entitled to." No. 13-CV-02998-JST, 2014 WL 4652283, at * 11. However this rationale is not instructive in the present case, as plaintiff's viable claims and forms of relief have already been significantly winnowed down in the wake of the Court's summary judgment order.[5] Plaintiff had ample opportunity to produce evidence necessary to satisfy the requisites of *Comcast* and

---

[4] In response to a Court order directing Rahman to reply to supplemental questions on this issue, he appears to assume that once he proves liability, he will be able to reach a damages settlement with Mott's. Docket No. 88. However, proof of liability would not automatically provide a legal entitlement to damages, and Mott's has expressed an unwillingness to engage in such a settlement. Docket No. 89.

[5] In *Lilly* the parties had yet to file motions for summary judgment at the time the Court ruled on plaintiffs' motion to certify.

United States District Court
Northern District of California

certify a class as to both liability and damages. He chose not to.

The Court finds that certifying a liability only class under Rule 23(c)(4) will not materially advance the resolution of this case. Accordingly, plaintiff's motion to certify is DENIED.

## IV.    Motion for Reconsideration

Mott's brings a motion for leave to file a motion for reconsideration, contending "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court."  *See* Civil L.R. 7-9(b)(3). Mott's argues that the Court erred in its summary judgment order in finding that Rahman had presented sufficient evidence to show restitution damages. While Mott's concedes that the Court properly considered whether Rahman had introduced sufficient evidence of damages to confer statutory standing under the UCL, it contends that the Court did not adequately consider the question of whether Rahman had introduced sufficient evidence to establish "actual damages." Docket No. 84, Def. Mot. at 2.

Under the UCL, a plaintiff is entitled to restitution damages. *Gustafson*, 294 F.R.D. at 539 ("Plaintiffs under the UCL can recover only restitution and injunctive relief."). "The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution. In order to recover under this measure, there must be evidence of the actual value of what the plaintiff received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). "The amount of restitution awarded under the…Unfair Competition Laws…must be supported by substantial evidence." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006).

In its summary judgment order, the Court held that "Rahman [had] provided an estimate of how much he spent on Mott's 100% Apple Juice (three to five dollars per bottle), as well as the incremental increase in his expenditures that [were] attributable to the allegedly misleading labeling (approximately one additional bottle every two weeks)." Docket No. 83 at 6-7. In other words, holding price and supply constant, Rahman's demand for Mott's 100% Apple Juice increased *solely* on account of the allegedly deceptive statement on the label. This is competent evidence of restitution damages because it isolates the incremental value associated with the challenged statement and thereby allows for disaggregation of the "value of what plaintiff received" from what he paid.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9

        Mott's relies heavily on *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014), a case in which the Court found that plaintiff had introduced adequate evidence of damages to confer statutory standing, but had not introduced sufficient evidence of restitution damages to survive summary judgment. In *Ogden*, the Court held that the plaintiff had failed to meet her evidentiary burden because she had not introduced "evidence of the value of Bumble Bee's products without the allegedly unlawful label statements." *Id.* at * 13. The plaintiff in *Ogden* ultimately failed to meet her evidentiary burden because she could not divine the value of the product in a hypothetical world where the challenged statement did not appear on the label.

        In the present case, Rahman need not employ an econometric model or a hedonic regression analysis to estimate the value of Mott's 100% Apple Juice without the "No Sugar Added" statement on the label. As noted above, the product was on store shelves without the challenged statement for over a year. Rahman has testified that, holding all other relevant factors constant, he demanded more of the product when its label bore the allegedly offending statement, and provided the Court with evidence of precisely how much more he demanded. The Court therefore found that he met his evidentiary burden. Accordingly, defendant's motion for leave to file a motion for reconsideration is DENIED.


        **IT IS SO ORDERED**.

Dated: December 3, 2014

_____
SUSAN ILLSTON
United States District Judge